IN RE INTEREST OF KANTRIL P. AND CHENELLE P., CHILDREN UNDER 18 YEARS OF AGE. CARLOTTA P., ALSO KNOWN AS CHARLOTTA P., APPELLANT, V. STATE OF NEBRASKA, APPELLEE.

598 N.W. 2d 729

Filed August 13, 1999.   No. S-98-756

Tracy Grinstead-Everly, of the Law Office of Susan Ann Koenig, for appellant.

Mary P. McFarland, guardian ad litem, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

Appellant Carlotta P., also known as Charlotta P. in the record, the natural mother of Kantril P. and Chenelle P., seeks to reverse a juvenile court's order terminating her parental rights. Carlotta contends that the juvenile court did not have subject matter jurisdiction over the children and, alternatively, erred in various respects, including that the court failed to find Neb. Rev. Stat. § 43-272.01(2) (Reissue 1998) unconstitutional. We affirm.

## I. ASSIGNMENTS OF ERROR

Carlotta assigns that the separate juvenile court erred in (1) failing to dismiss the petition for lack of subject matter jurisdiction; (2) failing to dismiss the motion to terminate parental rights because § 43-272.01(2) is unconstitutional; (3) terminating her parental rights because the State did not meet its burden

of proof that (a) the mother's failure to comply with the rehabilitation plan was reasonably related to the objective of reunification, (b) termination of her parental rights was in the best interests of the children, and/or (c) no reasonable alternative to termination of her parental rights existed; and (4) denying her motion for new trial.

## II. BACKGROUND

### 1. ADJUDICATION

On September 7, 1995, Carlotta took Kantril and Chenelle, then 6 and 4, respectively, to Saint Joseph Hospital's emergency room in Omaha, Nebraska, because she thought that someone was living in their attic and might have inserted drugs into one child's rectum and possibly both children's ears. Carlotta was hospitalized for 2 days at the Saint Joseph Center for Mental Health, and the children were immediately placed in foster care. Carlotta tested positive for cocaine use, and a doctor concluded from the tests that she had ingested cocaine shortly before taking the children to the emergency room.

On September 8, 1995, the Douglas County Attorney filed a petition in separate juvenile court alleging that Kantril and Chenelle were juveniles within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1993) in that they were homeless or destitute, or without proper support through no fault of Carlotta, specifically that their mother was unable to provide the care, support, and nurturance required by said children due to her own special needs and circumstances.

A detention hearing was held on September 26, 1995, at which a guardian ad litem appeared for the children. The court ordered that the children remain in the temporary custody of what was then the Nebraska Department of Social Services (now the Department of Health and Human Services (DHHS)). The children were placed with their noncustodial father on October 4, and remained with him throughout most of the proceedings.

Carlotta admitted to the allegations in the petition. The county attorney offered a factual basis which included that Carlotta had been diagnosed with schizophrenia and that because of that condition, she had hallucinations, including

visions of ghosts coming from the walls and attacking her children, and had difficulty keeping track of the children. The court accepted Carlotta's admission and, in an order dated March 8, 1996, found that Kantril and Chenelle were juveniles falling within the meaning of § 43-247(3)(a) and ordered that Carlotta submit to a chemical evaluation and that DHHS and the guardian ad litem conduct a predisposition evaluation.

## 2. REHABILITATION PLAN

Carlotta tested positive for crack cocaine in March and again in April 1996. Because of these positive test results, she was hospitalized at Hastings Regional Center from May 14 to June 7.

The court reviewed DHHS' temporary custody on July 30, 1996, and determined that it was in the children's best interests to remain in the temporary custody of DHHS. The court ordered Carlotta to: (1) visit the children 1 hour per week with supervision, contingent upon her appropriate behavior; (2) attend weekly therapy sessions to address violence issues and her mental health disorder; (3) take prescribed medication and consistently attend medication check appointments; (4) resume her drug dependency treatment; (5) obtain random drug screenings; (6) cooperate with the professionals involved with her care and treatment; (7) maintain stable and adequate housing and a legal source of income; and (8) work with a DHHS family support worker to learn home management skills, age appropriate expectations, and age appropriate discipline.

Carlotta set up a visit for individual mental health therapy but did not attend. In August 1996, after Carlotta was denied readmittance into a chemical dependency program she had participated in earlier, DHHS arranged for another assessment by another treatment service that recommended she be treated in a halfway house program. Carlotta refused to participate. In December, a DHHS caseworker referred Carlotta to the Immanuel hospital to address both her psychiatric and her chemical dependency problems. Carlotta did not participate in those services.

The court again reviewed custody on December 5, 1996, and June 5, 1997, finding on both occasions that the children's best

interests were to remain in DHHS' temporary custody and again ordered Carlotta to comply with the rehabilitation plan; although in the December 1996 order, the court did not include the provision to resume her drug dependency treatment, and in the June 1997 order, did not include either that provision or the provision to learn home management skills.

In 1997, Carlotta visited the children a total of seven times. She moved from Omaha to Tennessee in March and remained there until August, visiting her children only four times during that period. In August, a DHHS caseworker reminded Carlotta of the court-ordered rehabilitation plan's provisions. Carlotta was asked to attend Narcotics Anonymous meetings, but she refused. She told a DHHS caseworker that she would not see a psychiatrist or obtain treatment for her mental health disorder. Carlotta was told on three occasions that she needed to submit to random drug screenings and was given a referral to a service that would provide the screenings. The record indicates she did not submit to that program or any other program that would provide such screenings.

### 3. TERMINATION PROCEEDINGS

On January 16, 1998, the guardian ad litem filed a motion to terminate Carlotta's parental rights. In the motion, the guardian ad litem alleged that (1) conditions under Neb. Rev. Stat. § 43-292(6) (Cum. Supp. 1996) existed in that Carlotta failed in many ways to comply with the court-ordered rehabilitation plan, and thus the conditions leading to the children's adjudication under § 43-247(3)(a) had not been corrected; (2) conditions under § 43-292(7) existed in that the children had been in out-of-home placement for more than 18 consecutive months and Carlotta had failed to correct the conditions leading to the out-of-home placement, despite services offered by the State and ordered by the court; and (3) termination of Carlotta's parental rights was in the best interests of the children.

At the termination hearing, Carlotta's counsel made an oral motion to dismiss

> on the grounds that it is violative of [Carlotta's] rights to due process that the guardian ad litem be allowed to not only investigate this case, but then based on her own case

> that she has created[,] file her own motion to terminate the parental rights and then be allowed to try the same case which she herself was allowed to put together and possibly even testify in the case.

The court overruled the motion. At the hearing, the guardian ad litem examined witnesses and presented evidence but did not testify and no guardian ad litem report was submitted into evidence. The county attorney was present but remained silent throughout much of the hearing.

Near the conclusion of the termination hearing, Carlotta's counsel again moved to dismiss the case on the ground that the court did not have subject-matter jurisdiction. The court overruled the motion.

The court found that "the minor children are within the meaning of Section 43-292 (6) and 43-292 (7) . . . by clear and convincing evidence, insofar as their mother is concerned." The court found that it was in the children's best interests and welfare that Carlotta's parental rights be terminated and in their best interests that the State retain custody for adoptive planning and placement. Carlotta's parental rights were terminated.

Carlotta moved for a new trial. She argued that the court should have granted its first motion to dismiss because her due process rights were violated when the guardian ad litem was permitted to file and argue the motion to terminate. Carlotta argued that § 43-272.01(2), which describes the powers of the guardian ad litem, is unconstitutional because it gives too much power to the guardian ad litem. Carlotta also argued that the court lacked subject-matter jurisdiction and that the evidence was insufficient to sustain the court's order. The court overruled the motion.

Carlotta appealed and filed a motion in this court to bypass the Nebraska Court of Appeals. We granted the motion to bypass because of the constitutional issue asserted in this appeal.

### III. SCOPE OF REVIEW

Where a jurisdictional question does not involve a factual dispute, determination of the issue is a matter of law which requires an appellate court to reach a conclusion independent from that of the inferior court. *In re Interest of Anthony G.*, 255

Neb. 442, 586 N.W.2d 427 (1998); *In re Interest of Constance G.*, 247 Neb. 629, 529 N.W.2d 534 (1995) (*Constance G. I*).

■ Whether a statute is constitutional is a question of law on which the Nebraska Supreme Court is obligated to reach a conclusion independent of the decision reached by the trial court. *Bauers v. City of Lincoln*, 255 Neb. 572, 586 N.W.2d 452 (1998).

■ On appeal of a final order of a juvenile court, an appellate court tries factual questions de novo on the record, reaching a conclusion independent of the findings of the juvenile court, but when the evidence is in conflict, an appellate court considers and may give weight to the fact that the juvenile court observed the witnesses and accepted one version of the facts rather than another. *In re Interest of Constance G.*, 254 Neb. 96, 575 N.W.2d 133 (1998). See, *In re Interest of Amber G. et al.*, 250 Neb. 973, 554 N.W.2d 142 (1996); *Constance G. I, supra*.

■ A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Reiser v. Coburn*, 255 Neb. 655, 587 N.W.2d 336 (1998); *Hartwig v. Oregon Trail Eye Clinic*, 254 Neb. 777, 580 N.W.2d 86 (1998).

## IV. ANALYSIS

### 1. SUBJECT MATTER JURISDICTION

Carlotta argues that the juvenile court never acquired jurisdiction over Kantril and Chenelle because the county attorney, in its petition, made no allegations regarding the parental fitness of the children's *noncustodial* father and that the court made no findings regarding the father in its order adjudicating that the two children fell under the status as defined in § 43-247(3)(a).

■ This court resolved this jurisdictional issue in *Constance G. I, supra*, and again in *In re Interest of Amber G. et al.*, 250 Neb. at 980, 554 N.W.2d at 148, where we stated, "The purpose of the adjudication phase of the proceeding is to protect the interests of the child . . . ." The rights of the parents are determined at the dispositional phase of the juvenile proceeding, not at the adjudication phase. *Id.* To obtain jurisdiction over a juvenile, the court need only be concerned with whether the conditions in which the juvenile presently finds himself or her-

self correlate with the asserted subsection of § 43-247. See *Constance G. I, supra.*

In this case, the issue at the adjudication phase was whether Kantril and Chenelle, in their present living situation with Carlotta, were "without proper support." § 43-247(3)(a). The children's noncustodial father played no role in their living situation at the time they were taken into foster care. "[W]hether the father was fit or unfit to have custody did not arise and should not have arisen until the dispositional phase." *In re Interest of Amber G. et al.*, 250 Neb. at 981, 554 N.W.2d at 148. Carlotta's admissions to the county attorney's allegations, combined with the county attorney's proffered factual basis, sufficiently supported the court's adjudication that the children were without proper support in their present living situation and that therefore the court properly assumed jurisdiction over the children.

### 2. CONSTITUTIONALITY OF § 43-272.01(2); DUE PROCESS

Carlotta next asserts that the juvenile court erred in overruling her motion to dismiss in which she argued that § 43-272.01(2) is unconstitutional and deprived her of her constitutional right to due process of law. She asserts that § 43-272.01(2) is unconstitutional because it authorizes the guardian ad litem to act coextensively as both an attorney and a guardian for the children and that such a coextensive role in a termination proceeding violates a parent's constitutional due process rights. She asserts that the guardian ad litem in this case conducted an unconstitutional coextensive role, pursuant to § 43-272.01(2), by interviewing numerous individuals and filing guardian reports containing recommendations with the court while also filing the motion to terminate parental rights and presenting all the adverse evidence at the motion to terminate hearing.

■ A fundamental liberty interest protected by the 14th Amendment is implicated when the State attempts to terminate the relationship between a parent and a child. See, *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *Lassiter v. Department of Social Services*, 452 U.S. 18, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981); *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991), *disapproved on other*

*grounds, O'Connor v. Kaufman*, 255 Neb. 120, 582 N.W.2d 350 (1998). Therefore, as we have said, state intervention to terminate the parent-child relationship must be accomplished by procedures meeting the requisites of the Due Process Clause. See, *In re Interest of D.W.*, 249 Neb. 133, 542 N.W.2d 407 (1996); *State ex rel. Grape v. Zach*, 247 Neb. 29, 524 N.W.2d 788 (1994); *In re Interest of L.V.*, 240 Neb. 404, 482 N.W.2d 250 (1992). Carlotta's argument presents a procedural due process question, as the argument questions the means by which a parent's rights are terminated rather than the sufficiency of the reasons for termination.

Section 43-272.01(2) provides in pertinent part:

In the course of discharging duties as guardian ad litem, the person so appointed shall consider, but not be limited to, the criteria provided in this subsection. The guardian ad litem:

(a) Is appointed to stand in lieu of a parent for a protected juvenile who is the subject of a juvenile court petition, shall be present at all hearings before the court in such matter unless expressly excused by the court, and may enter into such stipulations and agreements concerning adjudication and disposition deemed by him or her to be in the juvenile's best interests;

(b) Is not appointed to defend the parents or other custodian of the protected juvenile but shall defend the legal and social interests of such juvenile. . . .

. . . .

(d) Shall make every reasonable effort to become familiar with the needs of the protected juvenile which . . . (ii) may include inquiry of others directly involved with the juvenile or who may have information or knowledge about the circumstances which brought the juvenile court action or related cases and the development of the juvenile, including biological parents . . . .

(e) May present evidence and witnesses and cross-examine witnesses at all evidentiary hearings;

(f) Shall be responsible for making recommendations to the court regarding the temporary and permanent placement of the protected juvenile and shall submit a written

report to the court at every dispositional or review hearing . . . .

. . . .

(h) May file a petition in the juvenile court on behalf of the juvenile, including a supplemental petition as provided in § 43-291 [supplemental petition or motion to terminate parental rights].

Before proceeding further, we note that Carlotta lacks standing to assert the entirety of her constitutional challenge to § 43-272.01(2). Carlotta's constitutional argument, in part, asserts that § 43-272.01(2) is unconstitutional because it permits the guardian ad litem to act as both an advocate and as a witness at the termination hearing. However, the record reflects that the guardian ad litem limited her role at the termination hearing entirely to that of an advocate. She never testified, she was never asked to testify, and neither she nor any other party offered one of her reports into evidence at the termination hearing. Therefore, Carlotta's argument, to the extent she asserts that § 43-272.01(2) is unconstitutional because it permits a guardian ad litem to act both as an advocate and as a witness at a hearing, is based upon a hypothetical rather than an actual case or controversy. While not a constitutional prerequisite for jurisdiction of courts of the State of Nebraska, existence of an actual case or controversy, nevertheless, is necessary for the exercise of judicial power in Nebraska. *State v. Baltimore*, 242 Neb. 562, 495 N.W.2d 921 (1993). A court decides real controversies and determines rights actually controverted and does not address or dispose of abstract questions or issues that might arise in a hypothetical or fictitious situation or setting. *In re Petition of Anonymous 1*, 251 Neb. 424, 558 N.W.2d 784 (1997). Carlotta's argument on this assignment of error is limited to the facts of this case, which means her "coextensive role" argument is limited to the assertion that § 43-272.01(2) is unconstitutional because it authorizes the guardian ad litem to both perform investigatory duties of a guardian prior to the termination hearing and, in addition to the county attorney, perform the role of an advocate for termination of parental rights.

## (a) *Betz v. Betz*

Carlotta asserts that our recent decision in *Betz v. Betz*, 254 Neb. 341, 575 N.W.2d 406 (1998), makes § 43-272.01(2) unconstitutional. In *Betz*, we stated that "the duties and responsibilities of a guardian ad litem" appointed in a divorce proceeding in which child custody is at issue "are not coextensive with those of an attorney who represents the minor." *Id.* at 347, 575 N.W.2d at 410. "One person may not serve in both capacities." *Id.* at 347-48, 575 N.W.2d at 410. Carlotta directs this court to the following passage from *Betz*:

> One can argue that the Nebraska Juvenile Code, Neb. Rev. Stat. § 43-272.01(2)(e) (Cum. Supp. 1996) allows a guardian ad litem to present evidence and witnesses and cross-examine witnesses at all evidentiary hearings. This statute, however, only applies to juvenile cases. Whether this juvenile statute is constitutional is something that we are not called upon to decide in this case.

*Betz v. Betz*, 254 Neb. at 347, 575 N.W.2d at 410. Carlotta argues that as a matter of constitutional law, parents in termination cases must receive at least the same safeguards as parents in custody cases such as *Betz*, and thus she contends that *Betz* "must be expanded to include juvenile cases," brief for appellant at 17, and that § 43-272.01(2) should be declared unconstitutional.

Carlotta's reliance on *Betz v. Betz, supra,* is misplaced. First, the passage from *Betz* commenting on § 43-272.01(2) is dicta and carries no precedential weight. See *Farmers Union Co-op. Ins. Co. v. Allied Prop. & Cas.*, 253 Neb. 177, 569 N.W.2d 436 (1997). Second, and more importantly, no constitutional issue was before this court in *Betz*. The issue in *Betz* was whether a guardian ad litem could *ethically* perform the functions of both an attorney and a witness simultaneously. This court concluded that Canon 5, DR 5-102(A), of the Code of Professional Responsibility, mandated *on ethical grounds* a separation of the two roles, and held that one person could not serve both as a child's attorney and as a child's guardian ad litem. Whether the guardian ad litem's actions in this case were unethical is irrelevant to the determination of the constitutional issue before us. Carlotta's argument that she was denied due process

would arise only if the guardian ad litem's actions deprived the parent of process constitutionally due her, which is an altogether different issue from whether the guardian ad litem's actions were unethical. See *Newman v. Sigler*, 421 F.2d 1377 (8th Cir. 1970). Thus, our decision in *Betz* has no bearing on the disposition of the constitutional issue in this case.

### (b) Fundamental Fairness

Carlotta argues that by permitting the guardian ad litem to bring termination proceedings after investigating the case, the statute authorized a violation of her due process rights by permitting the guardian ad litem to usurp the role of the county attorney. Carlotta, noting that § 43-272.01(2) authorizes the guardian ad litem to interview the parent, argues that the statute permits the guardian ad litem to "obtain potentially damaging information and admissions from them under the guise of investigation to determine the best interests of the children, and then use this information in bringing an action to terminate their parental rights." Brief for appellant at 17. She asserts that this coextensive role puts those parents who cooperate the most, through their efforts of helping their children and working toward the goal of ultimate reunification, at the highest risk of having their parental rights terminated. We read this argument as asserting that the coextensive role the guardian ad litem performed in this case is not a "fundamentally fair procedure[]" as the Constitution requires in a termination proceeding. See *Santosky v. Kramer*, 455 U.S. 745, 754, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982).

In *In re Interest of L.V.*, 240 Neb. 404, 413-14, 482 N.W.2d 250, 257 (1992), a case involving the termination of parental rights, this court stated what process is due:

> When a person has a right to be heard, procedural due process includes notice to the person whose right is affected by a proceeding, that is, timely notice reasonably calculated to inform the person concerning the subject and issues involved in the proceeding; a reasonable opportunity to refute or defend against a charge or accusation; a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusa-

tion; representation by counsel, when such representation is required by constitution or statute; and a hearing before an impartial decisionmaker.

(Citations omitted.) Carlotta's argument does not implicate any of the procedural requirements set forth in *In re Interest of L.V., supra.* Those requirements, however, are not exclusive, and therefore we examine the issue by applying the three-factor balancing test specified in *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), which includes: (1) the private interests affected by the proceeding, (2) the risk of error created by the State's chosen procedure, and (3) the countervailing governmental interest supporting use of the challenged procedure. See *Santosky v. Kramer*, 455 U.S. at 754 (stating that "the nature of the process due in parental rights termination proceedings turns on a balancing" of factors specified in *Mathews v. Eldridge*).

As to the first element of *Mathews v. Eldridge, supra*, a parent's interest at stake is profound—the possibility that he or she will be permanently deprived of his or her fundamental parental rights. See *In re Interest of R.R.*, 239 Neb. 250, 475 N.W.2d 518 (1991). " 'A parent's interest in the accuracy and justice of the decision to terminate his or her parental status is, therefore, a commanding one.' " *Constance G. II*, 254 Neb. at 102, 575 N.W.2d at 138 (quoting *Lassiter v. Department of Social Services*, 452 U.S. 18, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981)).

However, we do not discern how the risk of error (here, an erroneous termination), the second element of the *Mathews v. Eldridge* test, is increased by the guardian ad litem, instead of the county attorney, filing and arguing the case for termination. Even if the guardian ad litem was prohibited from this dual role, the guardian ad litem could conduct the same interviews and prepare a report which could be just as adverse as the testimony that the guardian ad litem in this case presented through witnesses and evidence, and the county attorney could then use that report as the basis for its own prosecution of a motion or petition to terminate parental rights. The fact that the guardian ad litem advocates and presents evidence does not reduce the necessary evidence, reduce the burden of proof, or eliminate any

procedures necessary to obtain termination. What remains then is the fact that § 43-272.01(2) provides that the guardian ad litem, instead of the county attorney, may bring and try the termination proceedings. That is constitutionally inconsequential. The guardian ad litem's actions in this case did not deprive Carlotta of due process. We conclude § 43-272.01(2) is not rendered unconstitutional by its authorization for a guardian ad litem to perform the investigatory duties of a guardian ad litem as well as bring and try a motion to terminate parental rights.

### 3. SUFFICIENCY OF EVIDENCE

Carlotta contends that the evidence was, in several respects, insufficient to terminate her parental rights. The court determined that the allegations in the guardian ad litem's motion to terminate were true, that conditions described in § 43-292(6) and (7) existed insofar as Carlotta was concerned, and that termination of Carlotta's parental rights was in the best interests of the children.

### (a) Statutory Requirements

The grounds for terminating parental rights must be established by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *Constance G. II, supra*; *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997). Section 43-292 provides that the court may terminate all parental rights when the court finds such action to be in the best interests of the juvenile, and

(6) Following a determination that the juvenile is one as described in subdivision (3)(a) of section 43-247, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination; or

(7) The juvenile has been in an out-of-home placement for eighteen or more consecutive months and the parents have failed to correct the conditions leading to the juvenile's out-of-home placement in spite of reasonable efforts and services to the parents ordered by the court or offered by the Department of Health and Human Services or other designated agency.

■ Under § 43-292(6), when the juvenile court exercises its discretion by instituting a rehabilitation plan for the parent, the State must prove by clear and convincing evidence that the parent has failed to comply, in whole or in part, with a reasonable provision material to the rehabilitative objective of the plan. *In re Interest of Joshua M. et al., supra.* "[T]he State is not required to show that noncompliance with a court-ordered rehabilitation plan is willful . . . ." *Id.* at 631, 558 N.W.2d at 560.

■ Carlotta first argues that even if conditions described in § 43-292(6) and (7) existed, and even if she failed to comply with reasonable, material provisions of the court-ordered rehabilitative plan, her parental rights could not be terminated. She argues that because DHHS consistently recommended to the court a permanency goal of reunification with the father and supervised visitation with Carlotta, "those orders with which [Carlotta] failed to comply were not related to reunification of the children with [her]." Brief for appellant at 19. Where the failure of a parent to comply with a rehabilitative plan is a ground for termination of parental rights, the rehabilitative plan must be reasonably related to the objective of reuniting the parent with his or her child. See, *In re Interest of Joshua M. et al., supra*; *In re Interest of C.D.C.*, 235 Neb. 496, 455 N.W.2d 801 (1990). Therefore, she argues, because the rehabilitative plan was unrelated to reunification, whether she complied with its provisions is irrelevant.

Carlotta's argument misinterprets the effect of DHHS' recommendations. The fact that DHHS recommended a permanency goal different from reunification with Carlotta had no bearing on whether the *court*-ordered rehabilitation plan properly was directed at reuniting the children with the parents. From our de novo review, we find that the rehabilitation plan's provisions such as chemical dependency treatment, psychiatric treatment, and visitation with the children were without question reasonably related to the goal of reuniting Carlotta with the children. Nothing in the record suggests that the court would not have considered reunifying the children with Carlotta had she complied with the provisions of its ordered rehabilitation plan. This argument is without merit.

### (b) Best Interests of Children

Carlotta next argues that the State failed to present clear and convincing proof that terminating her parental rights was in the best interests of the children. She asserts the record reflects that a strong bond and caring relationship still exist between her and the children and notes that at no time during the pendency of this case did DHHS recommend that the court terminate Carlotta's parental rights. In our de novo review, we do not find these facts persuasive.

During all of 1997, when Carlotta was not only permitted but ordered as part of her rehabilitation plan to visit the children once per week, she visited the children only seven times. Whatever strong bond remained between Carlotta and the children remained in spite of Carlotta's lack of effort. As we said in *In re Interest of D.*, 218 Neb. 23, 28, 352 N.W.2d 566, 570 (1984), "It weighs heavily in our minds that the parents have generally failed and neglected to take advantage of opportunities to visit their child."

Additionally, Carlotta made little effort to comply with the court-ordered rehabilitation plan from the time the court instituted the plan in July 1996 until the guardian ad litem moved to terminate Carlotta's parental rights in January 1998. During that time, she did not attend even one meeting or therapy session for either her drug dependency or mental health problems, despite DHHS' efforts. " 'A parent afforded a program of rehabilitation must realize that the courts will examine a pattern of parental conduct in determining an appropriate disposition for the best interests of a child.' " *In re Interest of V.M.*, 235 Neb. 724, 729, 457 N.W.2d 288, 292 (1990) (quoting *In re Interest of D., supra*).

> A parent's unwillingness to comply with a rehabilitation program directed at reuniting the parent with his or her child and designed to secure the continued long-term health and well-being of the child compels the conclusion that termination of that parent's rights is in the best interests of the child.

*In re Interest of Joshua M. et al.*, 251 Neb. 614, 637, 558 N.W.2d 548, 564 (1997). See *In re Interest of C.D.C.*, 235 Neb. 496, 455 N.W.2d 801 (1990).

Carlotta, however, argues that termination of her parental rights is not in the best interests of the children because a reasonable alternative exists that would better serve the children's best interests—permanent placement with and custody to their noncustodial father. She argues that the State failed to prove that no reasonable alternative exists other than termination of her rights. "In the absence of any reasonable alternative and as the last resort to dispose of an action brought pursuant to the Nebraska Juvenile Code, termination of parental rights is permissible when the basis for such termination is provided by clear and convincing evidence." *In re Interest of J.H.*, 242 Neb. 906, 916, 497 N.W.2d 346, 354 (1993). See, *In re Interest of S.B.E. et al.*, 240 Neb. 748, 484 N.W.2d 97 (1992); *In re Interest of C.K., L.K., and G.K.*, 240 Neb. 700, 484 N.W.2d 68 (1992).

Assuming without deciding that permanent placement with the father was a viable consideration at the time of the termination hearing, the record reflects such placement would not have been an *alternative* to termination of Carlotta's parental rights. The record reflects that Carlotta could not manage even supervised visitation at the time of the termination hearing. She neglected her children during much of the time that she was supposed to be rehabilitating herself as an effective mother. She wholly failed to rehabilitate herself, refusing to comply with the court's order to participate in drug dependency and mental health treatment programs. The best interests of Kantril and Chenelle require termination of Carlotta's parental rights under both § 43-292(6) and (7).

### 4. MOTION FOR NEW TRIAL

Carlotta moved for a new trial on grounds that the court lacked subject-matter jurisdiction, that her constitutional due process rights were violated, and that the evidence was insufficient to permit termination of her parental rights. As we have rejected those identical arguments in this opinion, it is axiomatic that the juvenile court did not abuse its discretion in overruling Carlotta's motion for new trial.

### V. CONCLUSION

We conclude that the juvenile court obtained jurisdiction over Kantril and Chenelle through a proper adjudication. We con-

clude that the guardian ad litem's actions in this case did not violate Carlotta's constitutional due process rights. Section 43-272.01(2) is not rendered unconstitutional by its authorization for a guardian ad litem to perform the investigatory duties of a guardian ad litem as well as bring and try a motion to terminate parental rights. Finally, from our de novo review and based upon clear and convincing evidence, we conclude, as did the juvenile court, that the best interests of the children require termination of Carlotta's parental rights. We affirm the juvenile court's order.

AFFIRMED.