IN RE INTEREST OF SKYE W. AND McKENZIE W.,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE,
v. JENNIFER W., APPELLANT.
704 N.W.2d 1

Filed September 27, 2005. No. A-05-285.

Jason E. Troia, of Gallup & Schaefer, for appellant.

Stuart J. Dornan, Douglas County Attorney, and Karen Kassebaum Nelson for appellee.

Lynnette Z. Boyle, guardian ad litem.

IRWIN, SIEVERS, and CASSEL, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Jennifer W. appeals the decision of the separate juvenile court of Douglas County terminating her parental rights as to two of her children, Skye W. and McKenzie W., pursuant to Neb. Rev. Stat. § 43-292(7) (Reissue 2004), and finding that such termination is in the best interests of the children. Jennifer alleges that the juvenile court erred in finding that termination of her parental rights is in the best interests of the children. We find that the State failed to adduce sufficient evidence to clearly and convincingly demonstrate that termination of Jennifer's parental rights is in the best interests of the children, and accordingly, we reverse the juvenile court's order.

## II. BACKGROUND

The two minor children involved in this case are Skye, born on August 11, 1997, and McKenzie, born on May 8, 2000. On January 16, 2003, a petition was filed alleging that Skye and McKenzie were children within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2004) through the fault or habits of Jennifer. The petition alleged inappropriate discipline and emotional abuse. On February 11, an amended petition was filed. On July 2, Skye and McKenzie were adjudicated on the allegations of the amended petition.

On October 12, 2004, a motion for termination of Jennifer's parental rights was filed. The motion sought such termination solely on the basis of alleging both the statutory provision of § 43-292(7) and the best interests of the children. On January 27, 2005, a termination of parental rights hearing was held. The State called only one witness, the caseworker assigned to the case, to testify in support of the termination of Jennifer's parental rights. The substance of this witness' testimony will be discussed below in the "Analysis" section of this opinion. On January 31, the juvenile court entered an order terminating Jennifer's parental rights. This appeal followed.

### III. ASSIGNMENT OF ERROR

Jennifer's sole assignment of error on appeal is that the juvenile court erred in finding that termination of Jennifer's parental rights is in the best interests of the children.

### IV. ANALYSIS

Jennifer asserts that the State failed to adduce clear and convincing evidence to demonstrate termination of Jennifer's parental rights is in the best interests of the children and that the juvenile court erred in finding otherwise. We find that the record in this case bears striking similarities to the record described by the Nebraska Supreme Court in *In re Interest of Aaron D.*, 269 Neb. 249, 691 N.W.2d 164 (2005). In that case, the court found that "the evidence in this record is, simply stated, neither clear nor convincing." *Id.* at 263, 691 N.W.2d at 175. We find the same to be true in this case. Accordingly, we reverse the judgment of the juvenile court.

Before parental rights may be terminated, the evidence must clearly and convincingly establish the existence of one or more of the statutory grounds permitting termination and that termination is in the juvenile's best interests. *Id.*; *In re Interest of Jac'Quez N.*, 266 Neb. 782, 669 N.W.2d 429 (2003). The grounds for terminating parental rights must be established by clear and convincing evidence, which is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of the fact to be proven. *In re Interest of Aaron D., supra*; *In re Interest of Kalie W.*, 258 Neb. 46, 601 N.W.2d 753 (1999). See *In re Interest of Heather G. et al.*, 12 Neb. App. 13, 664 N.W.2d 488 (2003).

It is well established that a juvenile's best interests are a primary consideration in determining whether parental rights should be terminated as authorized by the Nebraska Juvenile Code. *In re Interest of Aaron D., supra*; *In re Interest of DeWayne G. & Devon G.*, 263 Neb. 43, 638 N.W.2d 510 (2002); *In re Interest of Stacey D. & Shannon D.*, 12 Neb. App. 707, 684 N.W.2d 594 (2004). However, it is also well established that a parent's interest in the accuracy and justice of the decision to terminate his or her parental rights is a commanding one. *In re Interest of Aaron D., supra*; *In re Interest of Kassara M.*, 258

Neb. 90, 601 N.W.2d 917 (1999); *In re Interest of Kantril P. & Chenelle P.*, 257 Neb. 450, 598 N.W.2d 729 (1999); *In re Interest of Constance G.*, 254 Neb. 96, 575 N.W.2d 133 (1998).

As noted, the State in this case sought to terminate Jennifer's parental rights solely on the basis of § 43-292(7), which provides that the court may terminate parental rights if "[t]he juvenile has been in an out-of-home placement for fifteen or more months of the most recent twenty-two months." Section 43-292(7) operates mechanically and, unlike the other subsections of the statute, does not require the State to adduce evidence of any specific fault on the part of a parent. *In re Interest of Aaron D., supra.* In such cases, the Nebraska Supreme Court has indicated that appellate courts must be particularly diligent in the de novo review of whether termination of parental rights is, in fact, in the juvenile's best interests. *Id.* It is in the context of analyzing the best interests of the juvenile that courts must respect a parent's "commanding" interest in the accuracy and justice of the decision to terminate parental rights. *Id.* As the Nebraska Supreme Court stated in *In re Interest of Mainor T. & Estela T.*, 267 Neb. 232, 257, 674 N.W.2d 442, 463 (2004):

> The 15-month condition set forth in § 43-292(7) serves the purpose of providing a reasonable timetable for parents to rehabilitate themselves. . . . But termination based on the ground that a child has been in out-of-home placement for 15 of the preceding 22 months is not in a child's best interests when the record demonstrates that a parent is making efforts toward reunification and has not been given a sufficient opportunity for compliance with a reunification plan.

(Citation omitted.)

Although termination of parental rights solely on the basis of § 43-292(7) can be appropriate in cases in which clear and convincing evidence is presented, it may prove difficult in cases where the record is insufficient to prove any of the other statutory grounds for termination of parental rights—i.e., where the parent did not abandon the child, did not neglect to protect or provide for the child, did not fail to participate in necessary rehabilitation, and was not abusive. See *In re Interest of Aaron D.*, 269 Neb. 249, 691 N.W.2d 164 (2005). In such cases, where termination of parental rights is sought solely pursuant to

§ 43-292(7), proof that termination is nonetheless in a juvenile's best interests will, necessarily, require clear and convincing evidence of circumstances as compelling and pertinent to a child's best interests as those enumerated in the other subsections of § 43-292. *In re Interest of Aaron D., supra.*

As noted, we find the record in the present case to bear striking similarities to the record described by the Nebraska Supreme Court in *In re Interest of Aaron D., supra.* In that case, the court found that the record lacked clear and convincing evidence of circumstances as compelling and pertinent to the child's best interests as those enumerated in the other subsections of § 43-292. The court noted "the failure of the State to produce the clear and convincing evidence required to show that termination [of parental rights] would be in [the juvenile's] best interests." *In re Interest of Aaron D.*, 269 Neb. at 261, 691 N.W.2d at 174.

In *In re Interest of Aaron D., supra*, the sole witness presented by the State was the caseworker assigned to the case. The court noted that the State used the caseworker "as a proxy for all of the other witnesses whose expertise and testimony would have been helpful, and perhaps essential, in determining what was in [the juvenile's] best interests." *Id.* at 261, 691 N.W.2d at 174. In addition, the caseworker's testimony was based in large measure on her review of records and reports generated by others who directly observed the parties. The court specifically noted, for example, that one of the primary reasons the State proffered for seeking to change the juvenile's permanency objective to adoption involved problems during visitation. However, the caseworker never actually observed any visitation, and her opinion was based only on someone else's report about such problems.

The court in *In re Interest of Aaron D., supra*, further specifically noted that the juvenile's therapists did not testify, that family support workers did not testify, and that foster parents and teachers did not testify. The court opined that "[t]he State seems to have forgotten that the focus of this proceeding is not [the parent], but [the juvenile], and the State thus did not present evidence directly adduced from many of the people most able to testify as to [the juvenile's] condition, circumstances, and best interests." *Id.* at 263, 691 N.W.2d at 175.

The record in the present case is very similar to the record described in *In re Interest of Aaron D., supra*. In the present case, the sole witness called by the State to prove the need for termination of parental rights was the assigned caseworker. The sum total of the State's evidence for terminating Jennifer's rights to parent these children consisted of approximately 43 pages of testimony and one exhibit. The caseworker, as a proxy for expert medical testimony, attempted to present testimony about Jennifer's mental health issues and opined that Jennifer needed individual therapy, proof that she was taking medications, and regular psychiatric checkups to deal with a diagnosis of suffering from bipolar disorder. The caseworker, however, acknowledged that she did not recall what medications Jennifer was supposed to be taking and did not know if Jennifer still needed to be on medication.

In addition, the caseworker's testimony was based in large measure on information reported to her, rather than on her own personal observations. For example, the caseworker opined that the children would not be safe in Jennifer's care, based on Jennifer's diagnosis of bipolar disorder and on a review of visitation reports. The caseworker acknowledged, however, that there had never been any concerns about the children's safety during any visitation but that Jennifer had not made progress toward unsupervised visitation. The caseworker never made it clear why a lack of progress toward unsupervised visitation amounted to a concern for the safety of the children such that the children's best interests would be served by terminating Jennifer's parental rights.

Finally, the caseworker attempted to support her opinion concerning the best interests of the children by testifying about Jennifer's recent marriage. The record indicates that "shortly surrounding the time" that Jennifer married her new husband, he was "in the McCook Work Camp in McCook, Nebraska." The caseworker opined that "it's not in [the children's] best interests to have visitation with an individual who's not known to the children and that may have a background record with some incarceration at the time." The record does not indicate that Jennifer ever sought to have the children attend any "visitation" with her new husband. Additionally, the caseworker acknowledged that

she had no information concerning Jennifer's new husband or for what he was incarcerated. The caseworker opined, however, that "it takes a considerable action of an individual to be incarcerated in a penal institution and those are usually pretty serious actions of some sort that would violate the law."

The State presented no evidence from a medical expert or therapist in this case—either for the children or for Jennifer—concerning Jennifer's diagnosis, medicinal needs, or ability to successfully parent the children. The State presented no evidence from any foster parent or education provider. The State essentially presented no evidence whatsoever concerning the children at issue in this case—their needs or their best interests. Tellingly, the caseworker, who presented the entirety of the State's case for termination of Jennifer's parental rights and who had been assigned to these children's case since its inception in the juvenile court system, testified that she did not know any of the surrounding circumstances about the very incident that initially led to adjudication.

Furthermore, like the record in *In re Interest of Aaron D.*, 269 Neb. 249, 691 N.W.2d 164 (2005), the record in the present case does not contain any dispositional orders setting forth court-ordered rehabilitation plans, and we cannot review the reasonableness of case plans that are not contained in the record. In this case, the court purported to take "judicial notice of previous findings and orders as requested [by the State] and, as a matter of fact, on [the court's] own motion . . . take judicial notice of all previous findings and orders under this docket." However, none of these previous orders, plans, or findings were marked as an exhibit and made a part of the record or otherwise presented in the record on appeal so that we might be able to review them. See *In re Interest of Brittany C. et al.*, 13 Neb. App. 411, 693 N.W.2d 592 (2005) (noting papers requested to be judicially noticed must be marked, identified, and made part of record). Thus, although the caseworker testified that Jennifer has failed to rehabilitate herself, the State failed to introduce evidence in support of its contention that she failed to meet the requirements of her rehabilitative plans; nonetheless, the State is relying on Jennifer's alleged failure to comply with requirements that are not fully evidenced by the record. The only court-ordered plan apparent in the

record is part of a dispositional order entered on October 15, 2004, which was 3 days after the State filed its motion for termination of parental rights.

 The State cannot prove that termination of parental rights is in a child's best interests by implementing an unreasonable rehabilitative plan. *In re Interest of Aaron D., supra.* Because the relevant court-ordered plans are not part of our record, the reasonableness of the requirements imposed on Jennifer is uncertain. Under those circumstances, we cannot find Jennifer's alleged noncompliance with the requirements of her rehabilitative plans to be clear and convincing evidence that termination of her parental rights is in the children's best interests.

Jennifer herself testified that she had seen two different doctors and that one had diagnosed her with bipolar disorder while the other one had said she did not have bipolar disorder. She testified that her doctor had taken her off all medications and that she was participating in individual therapy until the State indicated that her therapist was "not approved." She testified that she left numerous messages on the caseworker's telephone, seeking an approved therapist, but that she received no response until the week before the termination hearing. Jennifer immediately scheduled an appointment with the approved therapist. She testified that she had maintained employment as well as safe and adequate housing.

 Termination of parental rights is permissible in the absence of any reasonable alternative and as the last resort to dispose of an action brought pursuant to the Nebraska Juvenile Code. *In re Interest of Aaron D.*, 269 Neb. 249, 691 N.W.2d 164 (2005). See *In re Interest of Kantril P. & Chenelle P.*, 257 Neb. 450, 598 N.W.2d 729 (1999). After our de novo review of the record, we do not find clear and convincing evidence that termination was in the children's best interests. " '[T]he law does not require perfection of a parent. Instead, we should look for the parent's continued improvement in parenting skills and a beneficial relationship between parent and child.' " *In re Interest of Aaron D.*, 269 Neb. at 265, 691 N.W.2d at 176 (quoting *In re Interest of Crystal C.*, 12 Neb. App. 458, 676 N.W.2d 378 (2004)). We conclude that the juvenile court erred in finding that the State established, by clear and convincing evidence,

that termination of Jennifer's parental rights is in the children's best interests.

## V. CONCLUSION

The State did not present clear and convincing evidence that termination of Jennifer's parental rights is in the children's best interests. The evidence presented to the juvenile court indicated that the caseworker was of the opinion that Jennifer was not adequately addressing mental health issues, although the caseworker acknowledged having no personal knowledge about Jennifer's needs or medical requirements in that area. There was no expert testimony presented pertinent to how termination of parental rights would affect the children. The State almost completely failed to provide the juvenile court, and by extension this court, with testimony from many of the people whose opinions and observations would have been most pertinent to the principal issue—the children's best interests. The evidence the State did present was minimal and was simply not clear and convincing. The judgment of the juvenile court is reversed.

REVERSED.