## IN THE COURT OF APPEALS OF IOWA

No. 14-1920
Filed July 9, 2015

IN RE THE MARRIAGE OF LUKE DANIEL SNOWDEN
AND AMY MARIE SNOWDEN

Upon the Petition of
LUKE DANIEL SNOWDEN,
        Petitioner-Appellee,

And Concerning
AMY MARIE SNOWDEN,
n/k/a AMY MARIE COSTELLO,
        Respondent-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Richard G. Blane II,

Judge.

Appellant appeals from the modification order terminating joint physical

care, establishing child support and visitation, and ordering payment of attorney

fees. **AFFIRMED.**

Wendy S. Meyer of Lane & Waterman, L.L.P., Davenport, for appellant.

Ryan D. Babich of Babich Goldman, P.C., Des Moines, and Kodi Ann

Brotherson of Beeker & Brotherson Law Office, Sac City, for appellee.

Heard by Tabor, P.J., McDonald, J., and Miller, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**MCDONALD, J.**

In their stipulated decree of dissolution of marriage filed in March 2012, Luke and Amy Snowden agreed to joint legal custody and joint physical care of their three children, with neither party to pay child support to the other. At that time, the family resided in the Des Moines metropolitan area, where Amy was attending law school. After graduating from law school and completing a judicial clerkship, Amy accepted an offer of employment with a law firm in Davenport and moved to the Quad Cities area. The distance between Des Moines and the Quad Cities made the prospect of joint physical care of the three children impracticable. In November 2013, Amy filed an application to modify the decree. Luke filed a counter application. After a contested trial, the district court awarded physical care of the children to Luke and awarded Amy liberal visitation. The district court also ordered Amy to pay child support and a portion of Luke's attorney fees. Amy timely filed this appeal.

I.

Our review is de novo. *See* Iowa R. App. P. 6.907; *In re Marriage of Sisson*, 843 N.W.2d 866, 870 (Iowa 2014). Our prior cases have little precedential value; as Tolstoy wrote, "All happy families are alike; each unhappy family is unhappy in its own way."[1] We thus resolve each case on the particular circumstances of the parties. *See In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983). We examine the entire record and decide anew the legal and factual issues properly presented. *See In re Marriage of Rhinehart*, 704 N.W.2d

---

[1] Leo Tolstoy, *Anna Karenina* 1 (1873).

677, 680 (Iowa 2005). We thus need not separately consider assignments of error in the district court's findings of fact and conclusions of law. Instead, we make findings and conclusions from our de novo review as we deem appropriate. *See Lessenger v. Lessenger*, 156 N.W.2d 845, 846 (Iowa 1968). However, "[w]e give considerable deference to the district court's credibility determinations because the court has firsthand opportunity to hear the evidence and view the witnesses." *In re Marriage of Berning*, 745 N.W.2d 90, 92 (Iowa Ct. App. 2007).

## II.

Child custody should not be modified unless there has been a material and substantial change in circumstances since the original decree. *See In re Marriage of Hoffman*, ___ N.W.2d ___, ___, 2015 WL 2137550, at *5 (Iowa 2015). The parties agree Amy's move to the Davenport area constitutes a material and substantial change in circumstances necessitating a modification of joint physical care. We thus turn to the questions of physical care, visitation, support, and attorney's fees.

## A.

The parties had joint physical care of the parties' three children and were able to successfully co-parent the children in that arrangement; consequently, both are considered suitable caretakers, and the relevant question before us is which parent can best minister to the needs of the children. *See Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002). In making that determination, the objective is to place the children in the environment most likely to bring them "to health, both physically and mentally, and to social maturity." *See In re*

*Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). Our primary concern is the long-term best interests of the children, not the perceived fairness to the parents. *See id.*

The district court issued a thorough, thirty-seven page modification decree. Concerning physical care, the district court exhaustively considered the factors set forth in Iowa Code section 598.41(5)(b) (2013) and *In re Marriage of Winter*, 223 N.W.2d 165, 166-67 (Iowa 1974). The district court also specifically considered a host of other considerations raised by the parties, including, by way of example, Amy's claim that Luke physically and verbally abused her during the marriage; the parties' abilities to co-parent and encourage a relationship between the children and the other parent; the stability and continuity of caregiving; Amy's prospective employment at her new law firm; the children's academic interests; religious training of the children; the parties' financial ability to provide for the children; and the quality of the parties' respective residences. The court ruled:

> When the Court considers all of the criteria listed above on page 15, as well as those specifically raised and discussed in this ruling, the Court comes to the conclusion that the best interest of the children considering the long-term objective is to place the child in an environment most likely to bring the child to healthy physical, mental, and social maturity, is that the children be placed with Luke.

On de novo review, we consider all of the relevant factors set forth in Iowa Code section 598.41(5) and *Marriage of Winter*, and we conclude that awarding Luke physical care of the children and granting Amy liberal visitation is in the long-term best interests of the children. In the interest of brevity, rather than reiterating the findings and conclusions of the district court in full herein, we choose to discuss several items of particular import.

First, we note that this is a close case. Many of the factors relevant to the physical care decision are in relative equipoise. To the extent that any factor militates in favor of physical care being placed with one parent over the other, the factor demonstrates only a weak preference and not a strong one. It is clear that both parents love their children. It is clear that either parent could provide for the emotional, social, moral, material, and educational needs of the children. *See Winter*, 223 N.W.2d at 166; *In re Marriage of Bowen*, 219 N.W.2d 683, 687 (Iowa 1974). It is also clear that each parent will support the other's relationship with the children. *See* Iowa Code § 598.41(3)(e). This has been demonstrated by the parties' successful joint physical care arrangement from the time of their separation through the modification trial.

There are several considerations that favor awarding physical care of the children to Luke rather than Amy. First, placing the children with Luke minimizes disruption in the children's lives. The children are young and have been in the Des Moines metropolitan area for an extended period of time. They are involved in church, sports, and other activities. They have developed friendships and a network of supporting relationships in this community. Luke's parents are in the area and are able and willing to help with the children. In short, central Iowa is their home. *See, e.g., Crawford v. Rosen*, No. 14-1466, 2015 WL 2393689, at *4 (Iowa Ct. App. May 20, 2015) (awarding physical care to father where mother unilaterally moved to pursue career opportunity and the move would have uprooted children from their community). Second, the evidence showed that Luke is more facilitative of and supportive of the children's activities. For

example, Luke enrolled A.S., age nine, in gymnastics. Amy has never attended any of A.S.'s gymnastics practices or events. In addition, there are several sports in which the children wished to participate, but Amy disapproved of the participation because she did not want to drive the children to practices during her parenting time. Third, specifically addressing Amy's concern, we conclude the whole of the evidence demonstrates that Luke was and is able to communicate with Amy regarding the children and that he was and is supportive of the children's relationship with Amy.

We place little weight, if any at all, on the purported distinction between the quality of the education the children would receive in the Des Moines area versus the Quad Cities area. While the district court did receive evidence regarding test scores in the relevant school districts, the data does not support the conclusion that one district is superior to another. The snapshot data admitted into evidence does not tell us anything about the persistence of trends within the district. *See Hoffman*, ___ N.W.2d at ___, 2015 WL 2137550, at *8. Further, the data does "not account for socioeconomic differences (such as race, ethnicity, marital status of the parents, educational attainment of the parents, household income etc.) between . . . school districts." *Id.* The data also does not account for "the potentially different aspirations of the students within [school] districts as measured by plans for educational advancement, occupational choice, and future income expectations. In sum, the data . . . may not reflect on the quality of instruction within the respective districts so much as the different

expectations and aspirations of the students and parents within the districts." *Id.* Test score data reveals very little about the quality of instruction within a school.

Like the district court, we place little weight on Amy's allegations of abuse. Luke denied he engaged in abuse. Much of the conduct Amy cites in support of her contention Luke engaged in abuse was mere verbal sparring (usually by email or text) between the parties occurring immediately prior to the dissolution of their marriage. *See In re Marriage of Ihle*, 577 N.W.2d 64, 69 (Iowa Ct. App. 1998) ("We acknowledge care must be exercised in judging a parent based on activities which take place during a particular time frame of the marriage, such as the separation or breakup of the relationship. Instead, a better picture of a parent can be found by viewing the total circumstances, and putting isolated events into perspective."). Further, generally, modification actions relate to conduct occurring after the original decree or most recent modification decree. *See Mears v. Mears*, 213 N.W.2d 511, 514 (Iowa 1973) (stating that when modifying child custody, a court looks at evidence of a substantial change in circumstances since the time of the last modification order). Amy's evidence thus has very little bearing on the question presented. This is particularly true here, where Amy's conduct prior to this modification action belies her claim that Luke's conduct precludes him from being a caretaker for the children. While Amy was in law school, after she moved out of the marital home, she placed the children in Luke's care for long stretches of time (up to six weeks) without exercising any overnight visitation with the children. She also stipulated to a shared care arrangement in the dissolution action. The record reflects the parties cooperated

and acted in the children's best interests post-dissolution and prior to this modification action. *See In re Marriage of Kunkel*, 555 N.W.2d 250, 253 (Iowa Ct. App. 1996).

Finally, we reject Amy's argument that the district court was biased against her and placed a greater evidentiary burden on her in resolving this case. Amy did not explicitly address the nature of the purported bias, but she intimates the district court demonstrated gender bias arising out of the court's discomfort or disapproval of the purported non-traditional role of Amy working as an attorney while her new spouse stayed at home to raise their child. Although Amy argued the district court placed a greater burden on her, she did not provide any specific examples of the district court doing so. Our review of the trial transcript and record does not reveal any bias against Amy. Instead, it reveals the district court made a fair and impartial decision in a close case after careful consideration of the evidence in light of the relevant factors. *See Crawford v. Rosen*, No. 14-1466, 2015 WL 2393689, at *4 (Iowa Ct. App. May 20, 2015) (finding no gender bias where the district court awarded the father physical care when the mother unilaterally moved to pursue career opportunity).

Ultimately, the district court, with its unique ability to assess witness demeanor, was in the best position to determine which of these two good parents should have physical care of their children. *See In re Marriage of Roberts*, 545 N.W.2d 340, 343 (Iowa Ct. App. 1996) ("[I]n the end we determine this to be a close case, for both parents love their children very much and each is capable of providing for their long-range best interests. In situations such as this, we note

the district court had the parties before it and was able to observe and evaluate the parties as custodians."). We affirm the district court on the issue of physical care of the children.

## B.

We next address the issue of visitation. Amy contends she was entitled to greater visitation, including the ability to switch weekend visitation periods to coincide with breaks or holidays from school. Visitation is to "assure the child the opportunity for the maximum continuing physical and emotional contact with both parents, . . . and [to] encourage parents to share the rights and responsibilities of raising the child." Iowa Code § 598.41(1)(a). Liberal visitation is generally in the best interests of children. *See In re Marriage of Riddle*, 500 N.W.2d 718, 720 (Iowa Ct. App. 1993). The visitation schedule set by the district court is fairly typical of those cases in which the distance between the parents' residences make mid-week visitation impractical. The primary difference between the visitation ordered and the visitation Amy seeks is the ability to switch weekends with Luke if the children have a long weekend because of a school service day or holiday. Nothing in the visitation order prevents the parties from agreeing to the switch. The evidence showed Luke would be supportive of such a switch. We decline to modify the visitation ordered.

## C.

The court ordered Amy to pay monthly child support of $1393 for three children, $1198 for two children, and $838 for one child. It also ordered Amy to provide medical insurance. Amy contends the district court deviated from the

child support guidelines in calculating the amount of child support. Specifically, she contends the district court ordered her to provide health and dental insurance for the children but did not factor in the cost of providing that insurance. *See* Iowa Ct. R. 9.14(2) (providing a non-custodial parent a deduction for the cost of providing health insurance). Amy seeks remand to the district court to recalculate her child support obligation, taking into account the cost of providing health and dental insurance.

We conclude remand is not proper. In this case, Amy did not provide the district court with the cost of providing the children's health and dental insurance. In her affidavit of financial status, she identified the cost as zero. In *In re Marriage of Van Veldhuizen*, this court remanded for a recalculation of child support when the district court did not deduct the cost of providing health insurance when calculating child support. *See* No. 14-0305, 2014 WL 6682332, at *7 (Iowa Ct. App. Nov. 26, 2014). That case is distinguishable. In that case, evidence of the cost of the insurance was in the record; the district court simply failed to perform the required calculation. Here, Amy seeks remand to introduce additional evidence she could have, but did not, introduced in the first instance. At trial, she did not seek to reopen the record to provide the court with evidence regarding the cost of insurance. *See In re Marriage of Kirman*, No. 02-2002, 2003 WL 21230952, at *3 (Iowa Ct. App. May 29, 2003) (denying a request to reopen the record to admit newly-discovered evidence). We deny her request for remand and affirm the district court's support determination.

D.

Amy contends the district court erred in ordering her to pay $7500 of Luke's trial attorney fees. In part, she points to a factual error in the decree where the court stated "Amy's attorney did not submit an affidavit." We review the district court's decision to award trial attorney fees for an abuse of discretion. *See* Iowa Code § 598.36 (giving the court discretion to award fees to the prevailing party in an amount deemed reasonable by the court); *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). An award of attorney fees is based on the respective abilities of the parties to pay and whether the fees are fair and reasonable. *See id.*; *In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994).

We conclude the district court did not abuse its discretion in awarding fees. The misstatement identified by Amy has no bearing on the district court's attorney fee award because Amy was not the prevailing party and would not have been entitled to an attorney fee award. Although Amy has larger financial obligations than Luke, Amy's salary at her law firm was substantially more than Luke's income. Given the foregoing, we cannot say the district court abused its discretion in awarding Luke a portion of his attorney's fees. *See Sullins*, 715 N.W.2d at 255 (affirming $7500 fee award and stating, "[b]ecause Ray was making more money than Donna at the time of trial and did not have to pay any attorney fees of his own, we cannot say the district court abused its discretion").

E.

Luke seeks an award of appellate attorney fees. An award of attorney fees on appeal is not a matter of right, but rests within the court's discretion and

the parties' financial positions.  *See In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007); *In re Marriage of Giles*, 338 N.W.2d 544, 546 (Iowa Ct. App. 1983).  "We consider the needs of the party making the request, the ability of the other party to pay," the relative merits of the appeal, and whether the party making the request was obligated to defend the district court's decision on appeal.  *See Berning*, 745 N.W.2d at 94.  Under the circumstances before us, we do not award any appellate attorney fees.

### III.

We have considered each of the parties' respective arguments, whether or not set forth in full herein.  For the foregoing reasons, we affirm the judgment of the district court.  Costs of this appeal are taxed to Amy.

**AFFIRMED.**