In re Interest of Crystal C., a child under 18 years of age.
State of Nebraska, appellee and cross-appellee, v.
Tammy S., appellant, and Greg C., appellee
and cross-appellant.

676 N.W.2d 378

Filed March 23, 2004. No. A-03-651.

Frank Shoemaker for appellant.

Robert E. Wheeler, Special Assistant Attorney General, for appellee State of Nebraska.

Nathan A. Schneider for appellee Greg C.

IRWIN, Chief Judge, and SIEVERS and INBODY, Judges.

SIEVERS, Judge.

Tammy S. appeals and Greg C. cross-appeals the decision of the county court for Red Willow County, sitting as a juvenile court, which decision terminated their parental rights to their daughter Crystal C.

## FACTUAL AND PROCEDURAL BACKGROUND

Tammy's appeal was decided this same day by a separate memorandum opinion in our cases Nos. A-03-650 through A-03-653, where we affirmed the juvenile court's decision to terminate her parental rights to Crystal as well as to her three other children. The remainder of this opinion relates only to the termination of Greg's parental rights to Crystal, born April 25, 1994. Crystal was living with Tammy and George Dean S., Sr. (Dean). Tammy is the biological mother of Crystal, Dean is the stepfather of Crystal, and Greg is the biological father of Crystal.

In early May 2000, after watching a videotape at school on "Stranger Danger" which helped children understand what is good and bad touch, Tesia S., Crystal's half sister, reported inappropriate touching to Tesia's first grade teacher, Rose Sitzman. Tesia stated to Sitzman, " 'My daddy tickles me there.' " When Sitzman asked Tesia where her father touches her, Tesia pointed to her genital area and said, "[H]ere." It is undisputed that when talking about her " 'daddy' " in this context, Tesia was referring to her stepfather, Dean. The school contacted the Nebraska Department of Health and Human Services (DHHS) and the McCook Police Department. A child protection worker from DHHS and a police investigator interviewed Tesia and Crystal on May 12.

On May 26, 2000, the State filed an application for temporary custody, which was granted, and Crystal and her three siblings—Tesia; George S., Jr. (George Jr.); and Sonya S.—were removed from Tammy and Dean's home and placed in foster care. They were initially placed with foster parents in Cambridge and lived there until August 2001. Then the children were placed with foster parents in Overton until August 2002. Then George Jr. and Sonya were placed with foster parents in McCook until November 2002, at which time they were placed with Tracie H. Tesia and Crystal were placed with a different foster parent from August until October 1, 2002, at which time they were placed with Tracie. So, all four children were again placed together.

An adjudication hearing was held on June 30, 2000. In its July 3 order, the court found by a preponderance of the evidence that Dean neglected and abused Tesia and Crystal, sexually abused

them, and used inappropriate corporal punishment. All four children were adjudicated under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1998). The children were placed in the care of DHHS for foster home placement.

The original goal was reunification of Greg and Crystal. A case plan was approved and adopted by the court on August 10, 2000. The plan set forth several requirements for Greg, including working with a family support worker to learn appropriate discipline, boundaries, and child-parent roles. Subsequent reports on progress in meeting the goals of the plan were received by the court.

Greg began exercising visitations with Crystal in July 2000. The evidence reveals that in the beginning he was not very consistent in his visitations with Crystal. On April 6, 2001, Greg married his current wife, LeeAnn C. LeeAnn brought to the marriage her two sons, and Greg and LeeAnn have a son who was born on June 14, 2001. Since his marriage, Greg has been much more consistent in his visitations with Crystal. During their visits, Greg and Crystal have engaged in such activities as bowling, playing on the computer, playing at the park or the playground, and eating out. LeeAnn was an active participant in Greg's visitations with Crystal, and the boys participated in some of the visits as well. Crystal seemed to enjoy spending time with Greg, LeeAnn, and the boys. All visits ended with hugs and kisses.

Notably, there were two occasions when Greg left Nebraska without notifying either Crystal or DHHS. The first time that Greg left Nebraska was in November 2000 when he moved to North Carolina. He returned in March 2001 and began to exercise regular visits with Crystal beginning on April 6. Greg left again in March 2002 when he went to Wyoming to find work. Greg subsequently returned to Nebraska and resumed visitations with Crystal in September 2002. Since that time, Greg has exercised regular visits with Crystal.

Between July 2000 and November 2002, several permanency review hearings were held, as well as hearings on numerous motions. We do not believe it is necessary to detail those proceedings, although we have reviewed them. On November 20, 2002, the county attorney filed a petition to terminate Greg's parental rights. Then on December 10, the county attorney withdrew his petition to terminate parental rights. On December 16,

DHHS filed a petition to terminate the parental rights of Greg. The petition alleged in part that Greg had abandoned Crystal for 6 months or more immediately prior to the filing of the petition, that Crystal had been in out-of-home placement for 15 of the most recent 22 months, and that Greg had neglected and refused to protect Crystal. On May 27 and 28, 2003, the termination of parental rights hearing was held. On May 28, the court announced its decision to terminate the parental rights of Greg on the first two grounds alleged. The order was signed and filed on June 2. Greg cross-appeals.

## ASSIGNMENT OF ERROR

Greg alleges that the juvenile court erred in finding the evidence sufficient to support an order terminating his parental rights.

## STANDARD OF REVIEW

■ Juvenile cases are reviewed de novo on the record, and the appellate court is required to reach a conclusion independent of the juvenile court's findings; however, when the evidence is in conflict, the appellate court will consider and give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Michael R.*, 11 Neb. App. 903, 662 N.W.2d 632 (2003).

## ANALYSIS

■ Greg argues that the juvenile court erred in terminating his parental rights to Crystal.

"A parent's natural right to the custody of his or her own child must yield when the two requirements of Neb. Rev. Stat. § 43-292 (Reissue 19[9]8) have been met. First, there must be clear and convincing evidence of the existence of one or more of the circumstances described in subsections (1) to ([10]) of § 43-292. Second, if one of the conditions prescribed in subsections (1) to ([10]) has been evidentially established, there must be an additional showing by clear and convincing evidence that termination of parental rights is in a child's best interests. It is a combination of the best interests of the child and evidence of fault or neglect on the part of the parent that is required."

*In re Interest of A.C.*, 239 Neb. 734, 739, 478 N.W.2d 1, 4-5 (1991). The juvenile court terminated Greg's parental rights, finding that Crystal had been in an out-of-home placement for more than 15 months and that Greg willfully abandoned Crystal on two occasions—both circumstances justifying termination of parental rights under Neb. Rev. Stat. § 43-292 (Reissue 1998).

*Out-of-Home Placement.*

At the outset, we observe that this case is somewhat unique in that at the time of Crystal's removal from her home, she was residing with Tammy, her mother, and Dean, Tammy's husband, and in that Greg was the noncustodial parent of Crystal. Accordingly, Greg's actions were not the basis for Crystal's removal from the home. Crystal came into the juvenile system because of sexual abuse by Dean, her stepfather—circumstances clearly beyond Greg's control.

Crystal has been in an out-of-home placement for 15 or more months of the most recent 22 months. She was removed from the parental home on May 26, 2000, and has remained in foster care since that time. This means that Crystal has been in foster care for over 3½ years or approximately 45 months. The State proved this statutory basis for termination of parental rights. When a basis for termination has been proved, the next inquiry is whether termination is in the child's best interests. See *In re Interest of Andrew M. et al.*, 11 Neb. App. 80, 643 N.W.2d 401 (2002).

*Abandonment.*

The court based its decision in part on the fact that Greg twice left McCook for other employment without notifying either Crystal or DHHS, actions which were contrary to the court-ordered plan. The State argues that this was abandonment, thereby justifying termination of Greg's parental rights to Crystal. Section 43-292(1) provides that a court may terminate parental rights if the parent has "abandoned the juvenile for six months or more immediately prior to the filing of the petition." The petition to terminate Greg's parental rights was filed on December 16, 2002.

The Nebraska appellate courts have not discussed the term "immediately prior," as used in § 43-292(1), regarding abandonment. However, the Nebraska Supreme Court has, in an adoption

setting where termination of parental rights was based on abandonment, dealt with similar statutory language from Neb. Rev. Stat. § 43-104 (Cum. Supp. 2002) that consent to adopt was not required of a parent who had "abandoned the child for at least six months next preceding the filing of the adoption petition." The Supreme Court said that the crucial time period was determined by counting back 6 months from the date the petition was filed. See *In re Application of S.R.S. and M.B.S.*, 225 Neb. 759, 408 N.W.2d 272 (1987). Other states have similarly ruled. See, *In re Adoption of K.A.S.*, 933 S.W.2d 942 (Mo. App. 1996) (applicable period of consideration is calculated backward from filing date of petition); *Matter of Adoption of Maria S.*, 145 Misc. 2d 99, 545 N.Y.S.2d 676 (1989) (reason for current in praesenti 6-month period of abandonment being required is commonsense realization that "bright line" is necessary in calculating when such 6-month period occurs so that any 6-month period cannot be arbitrarily utilized as basis for terminating parental rights regardless of current or present state of that relationship). But see *Abercrombie v. LaBoon*, 290 S.C. 35, 348 S.E.2d 170 (1986) (court not persuaded that only 6-month period prior to commencement of action may be considered by court because conduct which may have warranted finding of abandonment may be cured by parent's subsequent repentant conduct). Based on the foregoing authority and the plain language of the statute, we hold that as used in § 43-292(1), the term "immediately prior" regarding abandonment means the time period determined by counting back 6 months from the filing date of the petition.

■ Abandonment, for purposes of determining whether termination of parental rights is warranted under § 43-292(1), has been described as a parent's intentionally withholding from a child, without just cause or excuse, the parent's presence, care, love, protection, maintenance, and opportunity for the display of parental affection for the child. *In re Interest of Joseph L.*, 8 Neb. App. 539, 598 N.W.2d 464 (1999). While we question whether the evidence even comes close to satisfying this standard, the issue is resolved on another very straightforward basis.

Greg's absence from Nebraska from March to August 2002 does not constitute abandonment under § 43-292(1) because Greg was absent for approximately 5 months, which is less than

the 6-month statutory requirement. Cumulatively, Greg has been gone from Nebraska for a total of approximately 9 months, if we count his time in North Carolina beginning in November 2000. However, a close reading of § 43-292(1) does not allow us to count the North Carolina absence because it did not occur "immediately prior to the filing of the petition." It was nearly 2 years later, in December 2002, when DHHS filed its petition, and 2 years is not "immediately prior." Therefore, Greg has not abandoned Crystal, and the juvenile court erred in finding that abandonment had occurred.

*Best Interests of Crystal.*

A termination of parental rights is a final and complete severance of the child from the parent and removes the entire bundle of parental rights. *In re Interest of Amber G. et al.*, 250 Neb. 973, 554 N.W.2d 142 (1996). Therefore, with such severe and final consequences, parental rights should be terminated only in "the absence of any reasonable alternative and as the last resort." See *In re Interest of Kantril P. & Chenelle P.*, 257 Neb. 450, 467, 598 N.W.2d 729, 741 (1999). The record shows that Crystal enjoys her visits with Greg, LeeAnn, and the other children. Greg has, for the most part, had regular visits with Crystal and has improved by making his visits consistently. He missed visits for 5 months while he was out of the state seeking work. Although he should have told Crystal and DHHS of his plans, the law does not require perfection of a parent. Instead, we should look for the parent's continued improvement in parenting skills and a beneficial relationship between parent and child. These things are present here.

We cannot say that it is in Crystal's best interests that Greg's parental rights be terminated when all of the evidence is to the contrary. Greg and Crystal have a loving relationship. They enjoy spending time together, and Greg's parenting skills have improved greatly. Crystal has become an integral part of Greg's new family, having formed relationships with LeeAnn and the other children. In fact, Greg and LeeAnn have expressed an interest in obtaining custody of Crystal. While custody is not an issue before us in this appeal, this is significant because it demonstrates Greg's commitment to Crystal. Clearly, this is a

relationship worth salvaging, and it would not be in Crystal's best interests to terminate Greg's parental rights. Because the "best interests" prong of § 43-292 has not been met, we find that the evidence is not sufficient to support an order terminating Greg's parental rights.

## CONCLUSION

For the reasons stated above, we find that the juvenile court erred in terminating Greg's parental rights to Crystal, and therefore, we reverse that decision. As stated above, in a separate memorandum opinion for cases Nos. A-03-650 through A-03-653, we affirm the juvenile court's decision to terminate Tammy's parental rights to Crystal.

AFFIRMED IN PART, AND IN PART REVERSED.