- 383 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF MYA C. ET AL.
Cite as 23 Neb. App. 383

In re Interest of Mya C. et al.,
children under 18 years of age.
State of Nebraska, appellee, v.
David M., Sr., appellant.

___ N.W.2d ___

Filed November 17, 2015.    No. A-15-204.

1. **Juvenile Courts: Evidence: Appeal and Error.** Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings.
2. **Parental Rights: Evidence: Appeal and Error.** In a termination of parental rights case, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over the other.
3. **Parental Rights: Evidence: Proof.** Before parental rights may be terminated, the evidence must clearly and convincingly establish the existence of one or more of the statutory grounds permitting termination and that termination is in the juvenile's best interests.
4. **Parent and Child.** The court may terminate all parental rights when the court finds such action to be in the best interests of the juvenile and it appears by the evidence that one or more of the following conditions exist: The parents have substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection; following a determination that the juvenile is one as described in Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 2014), reasonable efforts to preserve and reunify the family if required under Neb. Rev. Stat. § 43-283.01 (Cum. Supp. 2014), under the direction of the court, have failed to correct the conditions leading to the determination; and the juvenile has been in an out-of-home placement for 15 or more months of the most recent 22 months.
5. **Parental Rights: Evidence: Proof: Words and Phrases.** The grounds for terminating parental rights must be established by clear and convincing evidence, which is that amount of evidence which produces in the

- 384 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF MYA C. ET AL.
Cite as 23 Neb. App. 383

trier of fact a firm belief or conviction about the existence of the fact to be proved.

6. **Parental Rights.** Parental rights may only be terminated if the court finds that termination is in the child's best interests.

7. **Parental Rights: Words and Phrases.** A termination of parental rights is a final and complete severance of the child from the parent.

8. **Parental Rights.** Because termination of parental rights has such severe and final consequences, parental rights should be terminated only in the absence of any reasonable alternative and as the last resort.

9. **Parental Rights: Presumptions: Proof.** There is a rebuttable presumption that the best interests of a child are served by having a relationship with his or her parent. Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State has proved that a parent is unfit.

10. **Parental Rights: Proof.** The Due Process Clause of the U.S. Constitution would be offended if a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness.

11. ____: ____. A court may not properly deprive a parent of the custody of a minor child unless it is affirmatively shown that such parent is unfit to perform the duties imposed by the relationship, or has forfeited that right.

12. **Parental Rights.** A determination of unfitness is distinct from the determination of whether statutory grounds for termination of parental rights exist.

13. **Parental Rights: Evidence.** While it may be relevant, the evidence supporting the statutory grounds for termination of parental rights is not always sufficient to demonstrate parental unfitness.

14. **Parental Rights: Proof.** While the burden remains with the parent to rehabilitate himself within a reasonable time, the guideline of 15 or more months of the most recent 22 months is merely a guideline of a reasonable time for parental rehabilitation and the passage of time itself does not demonstrate parental unfitness.

15. **Parental Rights: Evidence: Proof.** Generally, when termination of parental rights is sought under subsections of Neb. Rev. Stat. § 43-292 (Cum. Supp. 2014) other than subsection (7), the evidence adduced to prove the statutory grounds for termination will also be highly relevant to the best interests of the juvenile, as it would show abandonment, neglect, unfitness, or abuse.

16. **Parental Rights.** Statutory grounds for termination of parental rights are based on a parent's past conduct, but the best interests of the child requirement for termination focuses on the future well-being of the child.

17. **Parental Rights: Parent and Child.** The law does not require perfection of a parent.

18. **Parent and Child: Appeal and Error.** In determining whether the continuation of a parent-child relationship is in the best interests of the child, an appellate court should look for the parent's continued improvement in parenting skills and a beneficial relationship between parent and child.

19. **Parental Rights: Parent and Child.** Although the law does not require a child to await uncertain parental maturity, that rule should not be used to trod upon the rights of the parent or the children.

20. **Parental Rights.** The State needs to provide reasonable efforts to reunify a family only when terminating parental rights under Neb. Rev. Stat. § 43-292(6) (Cum. Supp. 2014).

Appeal from the Separate Juvenile Court of Lancaster County: Reggie L. Ryder, Judge. Reversed and remanded for further proceedings.

Laura A. Lowe, P.C., for appellant.

Joe Kelly, Lancaster County Attorney, and Lory A. Pasold for appellee.

Irwin, Inbody, and Riedmann, Judges.

Riedmann, Judge.

## INTRODUCTION

David M., Sr. (David), appeals from the order of the juvenile court for Lancaster County, Nebraska, terminating his parental rights to his minor children, LaToya M. and David M., Jr. (David Jr.). After our de novo review of the record, we reverse, and remand for further proceedings.

## BACKGROUND

This case began as an educational neglect case against David's partner, Ann B., because her oldest daughter, Mya C., had missed an impermissible number of days of school. When the educational neglect case began in the fall of 2012, Ann and David lived together with Ann's two children from a prior relationship, Mya and Tyrone C., and the couple's young

- 386 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF MYA C. ET AL.
Cite as 23 Neb. App. 383

daughter, LaToya. After "Intensive Family Preservation" workers with the Department of Health and Human Services (the Department) began observing the home, they became concerned that both Ann and David were neglecting all three children. The affidavit for temporary custody noted that during drop-in visits, the children wore the same dirty clothes for multiple days in a row, David yelled and used threatening language toward the children, and the parents left Mya in timeouts for extended periods of time. Personnel from the Department observed the home to be very dirty. They also received reports that Mya did not have enough food and had to sleep on the floor.

*Removal of Children.*

On February 14, 2013, the juvenile court granted temporary custody of Mya, Tyrone, and LaToya to the Department and ordered that the children be removed from the home. LaToya was 18 months old at the time of her removal. The next day, the State filed a supplemental petition adding allegations against David. The supplemental petition alleged in relevant part that on one or more occasions since at least December 2012:

   a) [David] failed to provide a safe, suitable, and stable living environment for the minor children;
   b) . . . [T]he minor children ha[d] been observed to be wearing the same dirty clothes multiple days in a row; [and]
   c) [David had] been verbally, emotionally and/or physically abusive to the minor children or a sibling of the minor children.

Ann and David pleaded no contest to the charges.

In April 2013, David Jr. was born to Ann and David. The State immediately removed him from his parents' care and placed him in the temporary custody of the Department. Ann ultimately relinquished her parental rights to all four children. Accordingly, this appeal pertains only to David's parental rights to LaToya and David Jr.

- 387 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF MYA C. ET AL.
Cite as 23 Neb. App. 383

*Case Plan.*

At a review hearing in June 2013, the court ordered in relevant part that David participate in mental health counseling to address anger issues, that he participate in family therapy with Ann to address relationship and coparenting issues, that he participate in a budget management course, and that Ann and David have reasonable rights of supervised parenting time as arranged by the Department. The court order also allowed for monitored parenting time to be arranged with 10 days' notice.

The Department chose Dr. James Carmer for David's therapy. Due to coordination issues between the Department's providers, his therapy did not begin until September 2013. At the termination hearing, Dr. Carmer testified that David participated in 27 individual sessions and that his therapy was ongoing. Dr. Carmer stated that David has made good progress on issues, including anger management, coping skills, emotional management, and appreciating other people's perspectives. Dr. Carmer opined that David has become more cooperative, less threatened by authority, and better able to manage his emotions and "problem solve" in a parenting context. Dr. Carmer explained that David has benefited from a parenting approach called Common Sense Parenting that he learned from his "family parenting partner." Although Dr. Carmer has not personally observed David with the children and has only reviewed visitation notes, he testified based on the notes and David's progress in therapy that in his professional opinion, David is capable of being a competent parent. Dr. Carmer also provided seven sessions of couple's counseling to Ann and David, which ceased when the couple's relationship ended around June or July 2014.

The State also provided David with a parenting partner to assist him with parenting skills. David completed a 6-week parenting class and testified that he learned useful skills from it. David also worked on budgeting with his parenting partner.

In June 2014, David's court plan was amended to include an order that he follow recommendations set by LaToya's and David Jr.'s doctors. Both LaToya and David Jr. experienced ongoing medical conditions. LaToya was diagnosed with failure to thrive, and she was given strict dietary guidelines and enrolled in occupational therapy at a local agency. LaToya's doctor required that each of her meals contain a fruit, vegetable, and meat. David Jr. suffers from allergies and must maintain a gluten-free and dairy-free diet.

David maintained employment as a dishwasher at a hotel throughout the case. While David initially worked the night shift, he has moved to a Monday-through-Friday daytime schedule and generally works from 7:30 a.m. to 3:30 p.m. However, David will frequently be asked to work late, come in on weekends, or work a split shift to accommodate hotel traffic, often without prior warning.

Supervised visitation has generally occurred at David's home, except for a brief time while Ann and David dealt with a bedbug issue at the beginning of the case and a 1-month gap when the couple ended their relationship and David searched for new housing. On the final day of the termination hearing in January 2015, David was living in a small home that would have been appropriate for reunification.

*Barriers to Reunification.*

David's caseworkers testified as to several ongoing issues throughout the case. One of David's initial caseworkers characterized him as "rude" and stated that he was disengaged and at times volatile during family team meetings. She also noted times when David was angry or confrontational with visitation workers while she managed the case. In some instances, David refused to bathe the children when he believed it would take too much of the visitation time. On a few occasions, visits were canceled or ended early because Ann or David did not have children's Tylenol or David Jr.'s nonallergenic formula and could not afford to buy some before a visit. Recently, David had to end visits early because his bathroom was too

- 389 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF MYA C. ET AL.
Cite as 23 Neb. App. 383

cold for bathing the children in the winter. Additionally, David Jr. needed surgery to remove an abscess around the time of the termination hearing. David did not visit him in the hospital, stating that he, himself, was ill and that he did not want to expose David Jr. to additional illness. Visitation after the surgery was canceled because David failed to procure the Epsom salts and gauze necessary to bathe David Jr.

David's work schedule often conflicted with his ability to timely arrive at visitation or attend at all, and it has caused him to miss the children's daytime doctor and therapy appointments. This issue is compounded by the fact that David does not own a vehicle and must rely on the bus for much of his transportation. David testified that when he and Ann were a couple, he was the sole wage earner, and that Ann was to attend the appointments when he could not. He further testified that he was frustrated when she failed to do so.

Not all of the barriers to reunification came from David. LaToya and David Jr. were removed from their first foster home because the foster mother was referring to the children as her children and was at times preventing David's access to them. The case managers also changed visitation supervision companies because the visitation workers at the first company were not giving accurate feedback about their observations and concerns. David expressed frustration when workers failed to give him any direction or constructive criticism.

*Visitation.*

Visitation never progressed beyond the "fully supervised" level. Ann and David initially had visitation with LaToya and David Jr. four times each week. Following the end of their relationship, the two divided their visitation days, with David having visitation alone with the children 2 days per week and Ann taking visitation the other 2 days.

Since David began visitation without Ann in June 2014, his visitation worker has been John Peterson. Peterson testified that visitation occurs in David's home and that David keeps his home clean and free of clutter. Throughout the visits

that Peterson has supervised, David has provided for all of LaToya's and David Jr.'s basic needs, including clean clothes, diapers, and "pull-ups." David was complying with David Jr.'s feeding restrictions before the caseworker and doctor decided that the foster mother would provide the food while the children were being tested for allergies. David provides LaToya with a fruit, a vegetable, and some type of main dish on each visit, in accordance with the doctor's instructions. Peterson testified that David generally has LaToya's food prepared before the children arrive, so that he only needs to reheat it along with David Jr.'s food, which is provided by the foster parents.

Peterson said that David's routine is to play with both children after dinner. David engages with them well and plays on the floor with them. He gives them both baths, dresses them in clean diapers or pull-ups and clean pajamas, and buckles them into their car seats with a kiss and hug. Peterson testified that David is a loving father and that the children also appear to love David. He stated that he has never seen David become agitated or upset. Peterson observed David with the children utilizing appropriate parenting skills, including calm redirection of LaToya's toddler tantrums and whining. When David needs to discipline LaToya, he uses age-appropriate methods, including a short timeout, calming and redirection strategies, and instruction on proper apologies. Peterson opined that David is meeting all of the goals that are in the service referral. He believes that David exhibits the parenting skills that he would need to parent the children on his own.

David's visitation attendance has not been perfect. Between August and the first week of November 2014, David missed 13 of the 28 scheduled visits. The majority of these cancellations have been because of work, and David's supervisor testified that October was a particularly busy month at the hotel, but David also missed a few visitations because he did not have adequate supplies on hand for the children. David's current caseworker initially testified that David was having issues correcting the originally adjudicated issues, but when

- 391 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF MYA C. ET AL.
Cite as 23 Neb. App. 383

she testified again at the continuation of the termination hearing in January 2015, she stated that the only factor preventing her from decreasing the level of supervision or increasing the amount of visitation was David's failure to be completely consistent in visitation attendance.

*Termination Order.*

The juvenile court terminated David's parental rights. The court found that statutory grounds to terminate David's rights existed under Neb. Rev. Stat. § 43-292(2), (6), and (7) (Cum. Supp. 2014). It also found that termination was in the best interests of the children and that David was an unfit parent.

## ASSIGNMENTS OF ERROR

David assigns that the juvenile court erred in (1) finding that statutory grounds existed for the termination of his parental rights, (2) finding that termination was in the children's best interests, (3) finding that the Department had exercised reasonable efforts to preserve and reunify the family, and (4) finding that he failed to make sufficient progress in court-ordered services to regain custody of his children.

## STANDARD OF REVIEW

[1,2] Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. *In re Interest of Karlie D.*, 283 Neb. 581, 811 N.W.2d 214 (2012). However, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over the other. *Id.*

## ANALYSIS

[3] Before parental rights may be terminated, the evidence must clearly and convincingly establish the existence of one or more of the statutory grounds permitting termination and that termination is in the juvenile's best interests. *In re Interest of Aaron D.*, 269 Neb. 249, 691 N.W.2d 164

- 392 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF MYA C. ET AL.
Cite as 23 Neb. App. 383

(2005). Although we find that statutory grounds for termination existed, we determine that the State did not prove by clear and convincing evidence that termination was in the children's best interests. Therefore, we reverse, and remand for further proceedings.

*Statutory Grounds for Termination.*

[4,5] David's first assignment of error is that the juvenile court erred in finding that statutory grounds for termination exist. The State sought to terminate David's parental rights under § 43-292(2), (6), and (7), which provides in relevant part:

> The court may terminate all parental rights . . . when the court finds such action to be in the best interests of the juvenile and it appears by the evidence that one or more of the following conditions exist:
>
> . . . .
>
> (2) The parents have substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection;
>
> . . . .
>
> (6) Following a determination that the juvenile is one as described in subdivision (3)(a) of section 43-247, reasonable efforts to preserve and reunify the family if required under section 43-283.01, under the direction of the court, have failed to correct the conditions leading to the determination; [and]
>
> (7) The juvenile has been in an out-of-home placement for fifteen or more months of the most recent twenty-two months.

The grounds for terminating parental rights must be established by clear and convincing evidence, which is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of the fact to be proved. *Kenneth C. v. Lacie H.*, 286 Neb. 799, 839 N.W.2d 305 (2013).

The juvenile court terminated David's rights under all three of the above subsections of § 43-292. After our de novo review of the record, we determine that statutory grounds existed for termination under subsections (7) and (2), but not under (6).

*Subsection (7)—Amount of Time*
*in Out-of-Home Placement.*

Under § 43-292(7), statutory grounds for termination exist if the juvenile has been in an out-of-home placement for 15 or more months of the most recent 22 months. LaToya was removed from the home on February 14, 2013, and David Jr. was removed to the Department's custody immediately following his birth in April of that same year. The children were never returned to the home during the pendency of the case. The State's amended petition asserted that LaToya had been in an out-of-home placement for more than 15 consecutive months at the time of the petition filing in June 2014 and that David Jr. would have been in an out-of-home placement for 15 or more months of the prior 22 months as of August 5. Therefore, there is sufficient evidence in the record to show that the children were in out-of-home placement for 15 or more months of the most recent 22 months under § 43-292(7).

*Subsection (2)—Neglect of Child*
*or Sibling of Child.*

We also find that clear and convincing evidence supports a finding that § 43-292(2) was satisfied in this case. Subsection (2) provides for termination where "[t]he parents have substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection." Court reports in evidence document that when Intensive Family Preservation services began conducting home visits following the commencement of the educational neglect case, on more than one occasion workers found that the children were wearing the same dirty pajamas multiple days in a row. The workers noted

- 394 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF MYA C. ET AL.
Cite as 23 Neb. App. 383

that David used angry, aggressive, and threatening language toward the children during their visits on at least six occasions in a 2-month span. In addition, the oldest daughter, Mya, was in a corner in her bedroom in timeout "more often than not" when they dropped in to visit. David admitted in testimony at the termination hearing that at the inception of the case, he kept Mya in timeout for longer periods than were age appropriate. Mya's school reported that she was constantly hungry. A visitation worker witnessed David yell at Mya for eating off the floor.

This evidence from a series of visits establishes clearly and convincingly that during the time period at the inception of the case, David substantially and repeatedly neglected the juveniles at issue or a sibling of those juveniles and refused to give them necessary parental care and protection. Therefore, the statutory grounds for termination under § 43-292(2) are also satisfied.

*Subsection (6)—Failure to Correct*
*Adjudicated Conditions.*

The record does not, however, provide clear and convincing evidence that § 43-292(6) is satisfied. Subsection (6) involves a failure to correct the adjudicated conditions. The conditions underlying the adjudication in this case are outlined above and include David's neglecting to give the children a clean home, clean clothes, and proper food; being unable to control his anger; yelling at the children; and disciplining them inappropriately. David has attended therapy to work on his anger and difficulty with authority. He has completed a parenting class. David's current visitation worker testified at trial that David has a tidy home; keeps proper clean clothes, food, and supplies for the children's visits; has always been a calm parent during visits; has never raised his voice; and uses age-appropriate and effective redirection techniques to discipline his toddler. Accordingly, the record does not contain clear and convincing evidence that the adjudicated issues have not been corrected

- 395 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF MYA C. ET AL.
Cite as 23 Neb. App. 383

and therefore does not support finding that statutory grounds for termination exist under subsection (6).

*Best Interests of Children.*

[6-8] Although we find that statutory grounds for termination exist, parental rights may only be terminated if the court finds that termination is in the child's best interests. § 43-292. A termination of parental rights is a final and complete severance of the child from the parent. *In re Interest of Crystal C.*, 12 Neb. App. 458, 676 N.W.2d 378 (2004). Therefore, with such severe and final consequences, parental rights should be terminated only in the absence of any reasonable alternative and as the last resort. *Id.*

[9] There is a rebuttable presumption that the best interests of a child are served by having a relationship with his or her parent. *In re Interest of Nicole M.*, 287 Neb. 685, 844 N.W.2d 65 (2014). Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State has proved that a parent is unfit. *Id.*

[10-14] "[T]he U.S. Supreme Court has been clear that the Due Process Clause of the U.S. Constitution would be offended '"[i]f a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness . . . ."'" *In re Interest of Xavier H.*, 274 Neb. 331, 348, 740 N.W.2d 13, 24 (2007), quoting *Quilloin v. Walcott*, 434 U.S. 246, 98 S. Ct. 549, 54 L. Ed. 2d 511 (1978). A court may not properly deprive a parent of the custody of a minor child unless it is affirmatively shown that such parent is unfit to perform the duties imposed by the relationship, or has forfeited that right. *In re Interest of Xavier H., supra.* A determination of unfitness is distinct from the determination of whether statutory grounds for termination exist. While it may be relevant, the evidence supporting the statutory grounds for termination is not always sufficient to demonstrate parental unfitness. For instance, adjudication under subsection (7), which looks only at the amount of time in which a child has been in an out-of-home placement, does

- 396 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF MYA C. ET AL.
Cite as 23 Neb. App. 383

not provide evidence of unfitness. *In re Interest of Aaron D.*, 269 Neb. 249, 691 N.W.2d 164 (2005). While the burden remains with the parent to rehabilitate himself within a reasonable time, the guideline of 15 or more months of the most recent 22 months is merely a guideline of a reasonable time for parental rehabilitation and the passage of time itself does not demonstrate parental unfitness. *In re Interest of Kendra M. et al.*, 283 Neb. 1014, 814 N.W.2d 747 (2012).

[15,16] Generally, when termination is sought under other subsections of § 43-292, the evidence adduced to prove the statutory grounds for termination will also be highly relevant to the best interests of the juvenile, as it would show abandonment, neglect, unfitness, or abuse. *In re Interest of Aaron D., supra*. However, this is not always the case, as statutory grounds are based on a parent's past conduct, but the best interests element focuses on the future well-being of the child. *Kenneth C. v. Lacie H.*, 286 Neb. 799, 839 N.W.2d 305 (2013).

Above, we find statutory grounds for termination met under § 43-292(2) and (7). While evidence of neglect under subsection (2) will often be relevant to a determination of unfitness, in this case it is not, because the conditions of neglect that support grounds for termination under subsection (2) existed only at the initiation of this case and David has since corrected those conditions. Our finding of repeated neglect is based upon reports that the children were dirty, hungry, and subject to inappropriate discipline during several Intensive Family Preservation worker visits before the children were removed from the home. As David's current visitation worker testified, David now has a clean home and clean clothing for the children, provides them with nutritious food during visits, has learned to manage his anger and is always calm during visits, and demonstrates effective and age-appropriate redirection methods for his toddler. Therefore, the evidence of neglect from the inception of the case is not sufficient to show that David is presently an unfit parent.

- 397 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF MYA C. ET AL.
Cite as 23 Neb. App. 383

[17,18] The State's evidence presented at the termination hearing also fails to establish clearly and convincingly that David is an unfit parent and that termination is in the children's best interests. We are mindful that the State's evidence does present concern about David's financial and organizational abilities to be a consistent parent. The State's only witnesses were the three caseworkers who have managed David's case. They noted several problems that David encountered throughout the case. David encountered difficulty trusting and cooperating with authority figures from the Department. David missed some of the children's medical appointments. At times, David lacked supplies or the funds to procure supplies, such as allergen-free cans of formula for David Jr., children's Tylenol, or sufficient healthy food for LaToya. David has consistently had problems with missing or arriving late to visitation when he was required to remain at work beyond the end of his scheduled shift. However, the law does not require perfection of a parent. *In re Interest of Aaron D.*, 269 Neb. 249, 691 N.W.2d 164 (2005). Instead, we should look for the parent's continued improvement in parenting skills and a beneficial relationship between parent and child. *Id.*

The State did not elicit a straightforward opinion from any of its witnesses as to whether termination at this time is in the best interests of the children. David's current caseworker stated that reunification would not be in the best interests of the children "at this time"; that she believed that permanency was in the best interests of any child, especially LaToya and David Jr.; and that she does not believe that languishing in the system is in any child's best interests. However, this testimony falls short of clear evidence that termination is in these children's best interests. Further, the caseworker testified on the final day of the termination hearing that the only basis for not moving toward increased visitation or decreased levels of supervision during visitation was David's inconsistency with visitation attendance.

The Nebraska Supreme Court has noted the limits of caseworker testimony, given that caseworkers spend relatively little time in the home with the families, and often serve as proxies for the visitation workers and therapists who have closer family contact. See, e.g., *In re Interest of Aaron D., supra*. In contrast, David presented the testimony of his current visitation worker and his therapist, both of whom testified positively about David's parenting, problem-solving, and anger management skills. The visitation worker testified that David has good parenting skills, that he communicates appropriately when his work schedule conflicts with visitation, and that David is meeting all of the parenting goals set out for him in the visitation referral. The visitation worker believes that David exhibits the kind of parenting skills necessary to parent on his own. He has had no safety concerns for the children during any of the visits. He also testified that he believes that David loves his children and that the children love David based on the interactions he has witnessed. Although the visitation worker has not been with David throughout the entire case, he has been the worker during the most relevant time period, from June 2014 to the present, which is the period after David ended his relationship with Ann and began visitation independently. This time period is most relevant to understanding how David would parent on his own if the children were eventually returned to his custody. This recent evidence shows that David's parenting skills are improving and that his relationship with his children is beneficial. See *In re Interest of Aaron D., supra*.

Nebraska appellate courts have reversed orders terminating parental rights where the parents are substantially complying with court orders and are improving as parents. See, *id*; *In re Interest of Hill*, 207 Neb. 233, 298 N.W.2d 143 (1980); *In re Interest of Justin H. et al.*, 18 Neb. App. 718, 791 N.W.2d 765 (2010). Termination may be improper in light of continuing parental progress even where lingering visitation issues exist. See *In re Interest of Xavier H.*, 274 Neb. 331, 740 N.W.2d

- 399 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF MYA C. ET AL.
Cite as 23 Neb. App. 383

13 (2007) (reversing termination of parental rights where mother had improved parenting skills, obtained employment, and maintained sobriety despite her visitation having been decreased to one time per week because of missed visits). See, also, *In re Interest of Aaron D.*, 269 Neb. 249, 691 N.W.2d 164 (2005) (reversing termination where mother had progressed on case plan despite continuing deficiencies in her employment, living situation, and visitation consistency).

[19] The evidence here reflects that David is struggling with balancing his employment and visitation commitments. This difficulty is compounded because David does not have access to a vehicle and must rely on bus transportation available only at set times. However, he has substantially complied with court plans, including signing releases of information, participating in mental health counseling, participating in family therapy, working on a budget with his parenting partner, completing parenting classes, utilizing parenting skills taught through State services, and following doctor's orders to provide appropriate food for the children. His parenting skills are improving and have been described as "good" by his most recent visitation worker. Although the law does not require a child to await uncertain parental maturity, that rule should not be used to trod upon the rights of the parent or the children. *In re Interest of L.J., J.J., and J.N.J.*, 220 Neb. 102, 368 N.W.2d 474 (1985). In light of David's improving parenting skills, stable job and residence, and beneficial relationship with his children, we cannot say that the record before us shows that David is unfit or that termination is in the best interests of the children at this time. See *In re Interest of Aaron D., supra*. Accordingly, we reverse, and remand for further proceedings.

*Reasonable Efforts.*

[20] David's third assignment of error alleges that the State failed to provide the requisite reasonable efforts to achieve reunification. However, the State needs to provide reasonable

- 400 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF MYA C. ET AL.
Cite as 23 Neb. App. 383

efforts to reunify a family only when terminating parental rights under § 43-292(6). *In re Interest of Hope L. et al.*, 278 Neb. 869, 775 N.W.2d 384 (2009). Because we determined above that subsection (6) was not satisfied in this case, we need not address this assignment of error.

*Progress on Regaining Custody.*

David's final assignment of error is that the juvenile court erred in determining that he had not made sufficient progress in court-ordered services to regain custody of his children. We note that in ordering termination, the juvenile court necessarily determined David was not in a position to regain custody of his children. While we agree with the juvenile court that David is not currently in a position to regain custody, we disagree to the extent that the trial court determined that David could not, within a reasonable time, be in a position to have custody of his children returned to him.

## CONCLUSION

Because the evidence does not show clearly and convincingly that David is an unfit parent or that termination of David's parental rights is in the best interests of the children at this time, we reverse, and remand for further proceedings.

Reversed and remanded for
further proceedings.