Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/07/2016 12:09 PM CDT

In re Interest of Alec S., a child
under 18 years of age.
State of Nebraska, appellee, v.
Brenda G., appellant.

___ N.W.2d ___

Filed March 15, 2016.    No. A-15-658.

1. **Parental Rights: Proof.** Neb. Rev. Stat. § 43-292 (Cum. Supp. 2014) provides 11 separate conditions, any one of which can serve as the basis for the termination of parental rights when coupled with evidence that termination is in the best interests of the child.

2. ____: ____. Neb. Rev. Stat. § 43-292(7) (Cum. Supp. 2014) operates mechanically and, unlike the other subsections of the statute, does not require the State to adduce evidence of any specific fault on the part of a parent.

3. **Parental Rights: Evidence: Appeal and Error.** If an appellate court determines that the lower court correctly found that termination of parental rights is appropriate under one of the statutory grounds set forth in Neb. Rev. Stat. § 43-292 (Cum. Supp. 2014), the appellate court need not further address the sufficiency of the evidence to support termination under any other statutory ground.

4. **Parental Rights.** Parental rights may only be terminated if the court finds that termination is in the child's best interests.

5. ____. A termination of parental rights is a final and complete severance of the child from the parent.

6. ____. Parental rights should be terminated only in the absence of any reasonable alternative and as the last resort.

7. **Parental Rights: Presumptions: Proof.** There is a rebuttable presumption that the best interests of a child are served by having a relationship with his or her parent. Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State has proved that a parent is unfit.

- 793 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF ALEC S.
Cite as 23 Neb. App. 792

8. **Parental Rights: Proof.** When termination is sought under Neb. Rev. Stat. § 43-292(7) (Cum. Supp. 2014), the element of best interests to support the termination of parental rights requires the State to prove by clear and convincing evidence that the parent is unfit.

9. **Parental Rights: Words and Phrases.** Parental unfitness means a personal deficiency or incapacity which has prevented, or probably will prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to a child's well-being.

10. **Parental Rights: Parent and Child.** The law does not require perfection of a parent. Instead, a court should look for the parent's continued improvement in parenting skills and a beneficial relationship between parent and child.

Appeal from the Separate Juvenile Court of Douglas County: Christopher Kelly, Judge. Reversed and remanded for further proceedings.

Matthew R. Kahler, of Finley & Kahler Law Firm, P.C., L.L.O., for appellant.

Donald W. Kleine, Douglas County Attorney, Anthony Hernandez, and Jocelyn Brasher, Senior Certified Law Student, for appellee.

Irwin, Pirtle and Riedmann, Judges.

Riedmann, Judge.

### INTRODUCTION

Brenda G. appeals from the order of the separate juvenile court of Douglas County which terminated her parental rights to her minor child, Alec S. We conclude that the State failed to adduce clear and convincing evidence that terminating Brenda's parental rights is in Alec's best interests. We therefore reverse, and remand for further proceedings.

### BACKGROUND

The State filed a petition on September 13, 2013, alleging that Alec, who was 8 years old at the time, was a child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008)

- 794 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF ALEC S.
Cite as 23 Neb. App. 792

due to the faults or habits of Brenda. The petition asserted that
Brenda had been diagnosed with posttraumatic stress disorder,
depression, and anxiety and that her medical providers recom-
mended inpatient treatment. As of September 13, Brenda had
failed to check herself into "the in-patient program recom-
mended by Dr. Patera." The petition alleged that Brenda was
unable to provide proper parental care, support, or supervision
for Alec and that he was at risk for harm. An amended petition
filed 4 days later added a claim that Brenda's use of alcohol
and/or controlled substances placed Alec at risk for harm. Alec
was removed from Brenda's care and placed in the temporary
custody of the Nebraska Department of Health and Human
Services. He was adjudicated pursuant to § 43-247(3)(a) in
January 2014.

In a disposition and permanency plan order dated March
18, 2014, Brenda was ordered to participate in a "Level 1
outpatient chemical dependency therapy program," submit to
random drug and alcohol testing, participate in "programs at
Community Alliance," attend family therapy with Alec, attend
individual therapy, participate in psychiatric care, and attend
supervised visitation. A September 16 review order continued
the same requirements for Brenda, except she was no longer
ordered to participate in a chemical dependency therapy pro-
gram. The requirements contained in an order dated January
20, 2015, mirrored those in the September 2014 order.

On February 6, 2015, the State filed a motion to terminate
Brenda's parental rights to Alec. The State sought termination
under Neb. Rev. Stat. § 43-292(2), (6), and (7) (Cum. Supp.
2014). The State also alleged that termination of Brenda's
parental rights was in the best interests of Alec. A termination
hearing was held on June 12.

The State presented the testimony of four witnesses. Randy
LaGrone is a clinical psychologist who Brenda began seeing
for outpatient treatment in January 2013, before this case was
initiated. She attended six sessions over the following year, but
missed or canceled numerous other sessions due to "ongoing

- 795 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF ALEC S.
Cite as 23 Neb. App. 792

major stressors in her life that disrupted compliance." LaGrone diagnosed Brenda with posttraumatic stress disorder, a panic disorder, and depression. He testified that she had experienced significant trauma in her life, including the death of her husband, his business partner, and her mother, as well as the assault of her mentally ill adult son. LaGrone testified that Brenda's conditions were very treatable and conditions with which people can make substantial progress. The biggest goal for Brenda was to establish consistency in treatment because structure and routine are important for those who have experienced trauma.

The State also presented the testimony of two mental health therapists, Mary Atwood and Jennifer Ratliff. Atwood saw Alec in September 2013, and he was diagnosed with adjustment disorder with mixed emotions. A treatment plan was developed for "working with [Alec's] emotions," but he said that he had already had trauma therapy and did not feel that he needed additional therapy. Alec only had one more individual session with Atwood, but Alec and Brenda saw Atwood for three sessions of family therapy beginning in March 2014. The goal was to enhance communication between Alec and Brenda because he did not feel that he could speak honestly with her. However, Brenda spent the session time "fussing" over Alec, asking him questions such as whether he had eaten and how his foster parents were treating him, so no progress was made during the sessions.

Ratliff began providing individual therapy to Alec in January 2015. She likewise diagnosed him with adjustment disorder, unspecified, and also identified features of attention deficit disorder. The goals for Alec's therapy were to identify coping skills, conflict resolution skills, and anger management skills; identify and express emotions; and address past trauma. Ratliff said he has made "some" progress on his goals.

In March 2015, Alec and Brenda began seeing Ratliff for family therapy. One of the goals for family therapy was to establish and improve communication, especially identifying

- 796 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF ALEC S.
Cite as 23 Neb. App. 792

and expressing emotions and feelings. Similar to Atwood, Ratliff testified that during the early sessions, Brenda seemed preoccupied with how Alec was doing—whether he was eating, attending school, and bathing—and the pending case. They did, however, make progress at two later sessions in May, because Brenda did not talk about the case and was able to engage in therapeutic dialog with Alec.

Ratliff testified that there is a bond and attachment between Alec and Brenda. She said that Alec needs an environment where his physical and emotional needs are met consistently and any ongoing mental health services are provided to him, including psychiatric care for medication management. He also needs an environment where there are consistent rules and nonphysical discipline. In addition, according to Ratliff, Alec needs a structured and stable environment because he has features of attention deficit disorder.

If Brenda's parental rights were to be terminated, Ratliff would recommend that Brenda's relationship with Alec continue because of their established bond and attachment. Ratliff testified that she offered to facilitate a family therapy session with Alec's foster parents and Brenda to create a plan to maintain the relationship because she believes it would be detrimental to Alec's well-being if his relationship with Brenda was severed. Ratliff opined that it is in Alec's best interests that he maintain a relationship with Brenda.

The State's final witness was the caseworker who had taken over the case in February 2015, just 4 months prior to the termination hearing. She observed that Brenda had been ordered to participate in various services such as random drug and alcohol testing, therapy, and visitation, but her participation had been inconsistent. The caseworker was concerned because Brenda had made very little progress in the case, which had been pending for 21 months at the time of the termination hearing. She was also concerned because as late as February 2015, Brenda was still unable to display an understanding of why she needed to participate in the required services. The

caseworker opined that termination of Brenda's parental rights was in Alec's best interests due to the lack of progress in the case. She acknowledged Ratliff's recommendation that the relationship between Alec and Brenda continue and indicated that she would support the recommendation if the foster family was willing to allow the relationship to continue.

The juvenile court entered an order dated June 15, 2015. It found that although Brenda's performance in certain areas improved following the filing of the motion to terminate, she had failed to participate in services to the degree necessary to move toward reunification. Thus, the court determined that the State presented sufficient evidence to satisfy termination under § 43-292(2), (6), and (7). The court also determined that clear and convincing evidence supported a finding that termination of Brenda's parental rights was in Alec's best interests. Brenda timely appeals to this court.

## ASSIGNMENTS OF ERROR

Brenda assigns that the juvenile court erred in finding that (1) the State proved statutory grounds for termination by clear and convincing evidence and (2) the termination of her parental rights is in Alec's best interests.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Nicole M.*, 287 Neb. 685, 844 N.W.2d 65 (2014).

## ANALYSIS

*Grounds for Termination.*

[1] The bases for termination of parental rights in Nebraska are codified in § 43-292. Section 43-292 provides 11 separate conditions, any one of which can serve as the basis for the termination of parental rights when coupled with evidence that termination is in the best interests of the child. *In re Interest of Sir Messiah T. et al.*, 279 Neb. 900, 782 N.W.2d 320 (2010).

In its order terminating Brenda's parental rights to Alec, the juvenile court found that the State had presented clear and convincing evidence to satisfy § 43-292(2), (6), and (7), which provides in relevant part:

> The court may terminate all parental rights . . . when the court finds such action to be in the best interests of the juvenile and it appears by the evidence that one or more of the following conditions exist:
>
> . . . .
>
> (2) The parents have substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection;
>
> . . . .
>
> (6) Following a determination that the juvenile is one as described in subdivision (3)(a) of section 43-247, reasonable efforts to preserve and reunify the family if required under section 43-283.01, under the direction of the court, have failed to correct the conditions leading to the determination; [and]
>
> (7) The juvenile has been in an out-of-home placement for fifteen or more months of the most recent twenty-two months.

[2] Brenda concedes that Alec has been in an out-of-home placement for 15 or more months of the most recent 22 months. Alec was removed from Brenda's home on or about September 13, 2013. At the time the motion to terminate parental rights was filed on February 6, 2015, Alec had been in an out-of-home placement for almost 17 months. At the time the termination hearing began on June 12, Alec had been in an out-of-home placement for approximately 21 months. Despite Brenda's argument, § 43-292(7) operates mechanically and, unlike the other subsections of the statute, does not require the State to adduce evidence of any specific fault on the part of a parent. See *In re Interest of Aaron D.*, 269 Neb. 249, 691 N.W.2d 164 (2005). Our de novo review of the

- 799 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF ALEC S.
Cite as 23 Neb. App. 792

record clearly and convincingly shows that grounds for termination of Brenda's parental rights under § 43-292(7) were proved by sufficient evidence.

[3] If an appellate court determines that the lower court correctly found that termination of parental rights is appropriate under one of the statutory grounds set forth in § 43-292, the appellate court need not further address the sufficiency of the evidence to support termination under any other statutory ground. *In re Interest of Justin H. et al.*, 18 Neb. App. 718, 791 N.W.2d 765 (2010). Therefore, this court need not review termination under § 43-292(2) or (6). Once a statutory basis for termination has been proved, the next inquiry is whether termination is in the child's best interests.

*Alec's Best Interests.*

[4-6] Although we find that statutory grounds for termination exist, parental rights may only be terminated if the court finds that termination is in the child's best interests. § 43-292. A termination of parental rights is a final and complete severance of the child from the parent. *In re Interest of Crystal C.*, 12 Neb. App. 458, 676 N.W.2d 378 (2004). Therefore, with such severe and final consequences, parental rights should be terminated only in the absence of any reasonable alternative and as the last resort. *Id*.

[7] There is a rebuttable presumption that the best interests of a child are served by having a relationship with his or her parent. *In re Interest of Nicole M.*, 287 Neb. 685, 844 N.W.2d 65 (2014). Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State has proved that a parent is unfit. *Id*.

[8,9] When termination is sought under § 43-292(7), the element of best interests to support the termination of parental rights requires the State to prove by clear and convincing evidence that the parent is unfit. *In re Interest of Xavier H.*, 274 Neb. 331, 740 N.W.2d 13 (2007). Parental unfitness means a personal deficiency or incapacity which has prevented, or

- 800 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF ALEC S.
Cite as 23 Neb. App. 792

probably will prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to a child's well-being. *In re Interest of Nicole M., supra*.

In the present case, the State presented only four witnesses, including three mental health professionals and the caseworker who was assigned to the case at the time the motion to terminate Brenda's parental rights was filed. We find that the evidence in this case is similar to that presented in *In re Interest of Aaron D.*, 269 Neb. 249, 691 N.W.2d 164 (2005). In *In re Interest of Aaron D.*, the State presented the testimony of only one witness, the caseworker. On appeal, the Nebraska Supreme Court acknowledged that the caseworker for a family is likely to be an important witness, but cautioned that a caseworker should not be used as a proxy for all of the other witnesses whose expertise and testimony would have been helpful, and perhaps essential, in determining what was in the child's best interests. The Supreme Court also recognized that while some of the caseworker's testimony was based on her own observations, she largely testified based on her review of the records and reports generated by others who observed the parties. Reiterating that the evidence establishing that termination is in the child's best interests must be clear and convincing, the Supreme Court found that "the evidence in this record is, simply stated, neither clear nor convincing." *Id*. at 263, 691 N.W.2d at 175.

Similarly, the caseworker in the present case testified in large part based on her review of the records from others such as visitation supervisors and medical professionals, the vast majority of which records were not offered into evidence at the termination hearing. The case began because Brenda's medical providers, specifically a Dr. Patera, recommended that she undergo inpatient mental health treatment. There was no evidence received from Dr. Patera, either by way of testimony or medical records, as to the basis for Brenda's diagnoses or why he recommended inpatient treatment. Nor was there any

- 801 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF ALEC S.
Cite as 23 Neb. App. 792

evidence presented as to how Brenda's mental health diagnoses and treatment needs affected her ability to safely parent Alec. There are some references in the record to Brenda's seeing a psychiatrist and taking prescription medication, but the State did not present any evidence from the psychiatrist who manages her prescriptions or offer any medical records detailing the need for medication or Brenda's prognosis. In sum, although LaGrone, a clinical psychologist, testified as to the multiple stressors in Brenda's life, there was very little evidence presented regarding what is continually and vaguely referred to as Brenda's "mental health needs" upon which the removal and adjudication were primarily based.

Further, the amended petition for adjudication references Brenda's use of alcohol and/or controlled substances, and she has been required to undergo random testing. There is no evidence in the record, however, of why. There was no evidence establishing that Brenda has an alcohol or drug addiction or that her use of drugs impacted her ability to parent Alec. We note that after September 2014, the juvenile court no longer required Brenda to participate in a chemical dependency program. From our review of the record, it appears that any treatment recommendations for Brenda were to address mental health issues, not substance abuse issues.

More important, however, the record lacks substantive testimony from those close to Alec such as visitation supervisors, his foster parents, his doctors, or his teachers. As iterated in *In re Interest of Aaron D.*, 269 Neb. 249, 691 N.W.2d 164 (2005), the primary consideration in determining whether to terminate parental rights is the best interests of the child, and thus, a juvenile court should have at its disposal the information necessary to make the determination regarding the minor child's best interests. Yet here, similar to *In re Interest of Aaron D.*, the evidence focused on Brenda's personal shortcomings, as opposed to placing the focus on Alec, and there was little evidence presented from any of the people most able to testify as to Alec's condition, circumstances, and best

- 802 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF ALEC S.
Cite as 23 Neb. App. 792

interests. Atwood, a mental health therapist, testified she only saw Alec on two occasions for individual therapy and three occasions for family therapy. We gather from the record that the purpose of her testimony was to show Brenda's inconsistency in attending family therapy, which Atwood primarily attributed to transportation issues, and her perception of a disconnect between Alec and Brenda, although that perception is contrary to the visitation records and Ratliff's testimony evidencing a bond between the two.

Although Ratliff, who provides current therapy for Alec and Brenda, testified, we have no information as to how Alec does in school, whether he experiences behaviors in his foster home, whether he is physically healthy, or how he responds after visits with Brenda. Ratliff testified generally that in therapy, Alec is working on coping skills, handling his emotions, and addressing past trauma, but there is no explanation as to whether Alec's shortcomings stem from Brenda's parenting or from general trauma such as the death of his stepfather. The record is largely devoid of any explanation of the nature and extent of Alec's physical, mental, or emotional condition. Ratliff referenced psychiatric care for medication management for Alec, but the record lacks any evidence indicating that Alec is currently taking medication or should be taking medication, nor was there any evidence that Alec is seeing a psychiatric provider who is prescribing or could prescribe medication for him.

Significantly, Ratliff, the witness who had the most personal contact with Alec, recommended that the relationship between Alec and Brenda continue even if Brenda's parental rights were terminated. Not only was that her recommendation, but she opined that it would be in Alec's best interests to maintain a relationship with Brenda and that it would be "detrimental to [his] well-being" to sever that relationship.

Despite this, we recognize that the State's evidence raises questions about Brenda's ability to parent Alec. The fact that Brenda has been diagnosed with several mental health

- 803 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF ALEC S.
Cite as 23 Neb. App. 792

disorders and has failed to consistently attend treatment for those conditions is concerning. It is also concerning that as of February 2015, Brenda still lacked an understanding as to why the case was ongoing and why her participation in the services offered to her was necessary and best for Alec. Between February and June 2015, Brenda did make progress, however. The caseworker acknowledged that in that timeframe, Brenda found stable and appropriate housing for herself, consistently attended visitation, made progress during family therapy sessions with Alec, and improved her communication with the caseworker, including signing release forms to allow access to her medical records. Additionally, the more recent visitation notes no longer report any inappropriate questions from Brenda inquiring into the case or treatment by Alec's foster parents nor are there mentions of Brenda yelling or her anger escalating during visits.

We acknowledge that the caseworker opined that terminating Brenda's parental rights would be in Alec's best interests based on the length of the case and the absence of progress toward the case plan goals. However, the Nebraska Supreme Court has noted the limits of caseworker testimony, given that caseworkers spend relatively little time in the home with the families and often serve as proxies for the visitation workers and therapists who have closer family contact. See, e.g., *In re Interest of Aaron D.*, 269 Neb. 249, 691 N.W.2d 164 (2005).

[10] We also keep in mind that the law does not require perfection of a parent. See *id*. Instead, we should look for the parent's continued improvement in parenting skills and a beneficial relationship between parent and child. *Id*. Brenda has shown recent improvement in addressing her goals, particularly between February and June 2015, but progress was reported in June 2014 as well. A visitation note from that month indicated that Brenda had been working on staying consistent with the services offered through different agencies and workers and had been doing better. A visitation report

from the following month recommended that visits should be increased.

The record is also replete with references to the bond and loving relationship between Alec and Brenda. The visitation notes include comments such as, "Brenda is very loving towards Alec. She is very attentive during visits and always gives him her full attention. In return Alec is very affectionate and provides lots of information for her so they never run out of things to talk about." A note from June 2014 reads, "Brenda loves Alec very much, and it shows at every visit." A July 2014 visitation note reported, "Brenda shows lots of love and affection to Alec who shows it back. Both hope to have more visits plus visits at home."

Based on our de novo review of the record, we conclude that the juvenile court erred in finding that the State established, by clear and convincing evidence, that termination of Brenda's parental rights was in Alec's best interests.

## CONCLUSION

Because the evidence does not show clearly and convincingly that termination of Brenda's parental rights is in the best interests of Alec at this time, we reverse, and remand for further proceedings.

Reversed and remanded for further proceedings.